## ERWIN FRETWELL v. THE STATE..

No. 2382. Decided February 26, 1902.

Motion for Rehearing Decided April 30, 1902.

**1.—Attempt to Produce Abortion—Evidence—Motive.**

On a trial for attempt to produce an abortion, it is competent to prove by the prosecutrix, as bearing on defendant's motive, that defendant was the father of her unborn child; that he had had sexual intercourse with her and had thereby impregnated her.

**2.—Same—Prosecutrix as Witness.**

On a trial for attempt to produce an abortion, where prosecutrix was a witness and defendant's counsel asked her about interviews with and agreement she had had with State's counsel as to her testimony and the dismissal of a case of adultery against her if she testified against defendant, it was competent for the State, in rebuttal, to prove that the State's attorney had told her at the time "to only swear to the truth."

**3.—Bill of Exceptions to Excluded Testimony to Contradict Witness.**

A bill of exceptions to the exclusion of testimony sought to be introduced for the purpose of contradicting a witness, to be sufficient, must set out both the excluded testimony and the testimony of the witness as delivered on the trial which it was intended to contradict.

**4.—Attempt to Produce Abortion—Evidence—Acts and Declarations of Defendant.**

On a trial for attempt to produce an abortion, it is competent, as going to show defendant's motive, to prove that he had endeavored to pursuade other men to copulate with the prosecutrix, and told them he could help them in their efforts to do so.

**5.—Medical Expert Testimony—Hypothetical Case.**

An objection that the hypothetical case submitted for his opinion to a medical expert did not embrace all the material facts, would not afford ground for reversal where it was not shown that defendant was denied the right, on cross-examination, to put all the material facts in such hypothetical case in evidence.

**6.—Charge of Court—Weight of Evidence—Quoting Statute.**

A charge of court which makes a statement to the jury of what is contained in the information is not upon the weight of evidence, nor is it error to correctly quote the statute on which the prosecution is based, the same being properly applied to the facts in other portions of the charge.

**7.—Argument of Counsel—Reading and Discussing Law.**

Improper argument of counsel will not afford ground for reversal where no charge was asked expunging the same from the consideration of the jury; and reading and discussing law before the court in the presence of the jury will not constitute reversible error unless abuse of the court's discretion in the matter has been shown to the prejudice of defendant.

**8.—Attempt to Produce Abortion—Evidence Sufficient.**

On a trial for attempt to produce abortion by means of ergot, it is not needful to establish its specific action on the uterus, or its certainty as an abortifacient. It is sufficient to show it is specially liable to set up constitutional disturbances which are apt to terminate in abortion. And where the evidence for the State unquestionably indicates that such would have been its effect, and that defendant gave it for that purpose, the evidence is sufficient. But see infra, paragraphs 9 and 10.

### ON MOTION FOR REHEARING.

**9.—Attempt to Produce Abortion—Construction of Statute—Evidence Insufficient.**

Our statute with regard to the crime of attempt to commit an abortion, does not seem to be predicated on the means prescribed evidencing the intent of accused, but on the means actually used; and consequently, though the doses of

ergot as prescribed by defendant would have produced abortion as he intended, yet if the prosecutrix did not take the prescribed doses, but actually took doses not likely to produce abortion, a conviction will not be sustained.

**10.—Same.**

On a trial for attempt to produce abortion, defendant's guilt does not appear to be predicated on his intention, but on the actual appliance of the means prescribed.

Appeal from the County Court of Somervell. Tried below before Hon. J. G. Adams, County Judge.

Appeal from a conviction of attempt to produce an abortion; penalty, a fine of $150.

Appellant was charged by the information with an attempt to produce an abortion upon Lucy Godsey, a pregnant woman, with her consent, by then and there administering to her a certain drug and medicine well calculated to produce that result.

The following is a statement of the case as contained in appellant's brief:

Upon the trial of the cause the proof was sufficient to show that the appellant procured and caused to be administered to the prosecuting witness, Lucy Godsey, a certain drug and medicine known as fluid extract of ergot; that he directed the said Lucy Godsey to take said medicine every three hours, a teaspoonful at a dose, until she took all of it, or until she came all right. The proof showed that the said Lucy Godsey did not take said medicine as directed by appellant, but that she took it as directed for one day only, and that thereafter she only took it three times a day before meals, and some days did not take it at all, and that it took her from Monday of one week to Wednesday of the next week to take three ounces of said medicine; that at the time she took this medicine she had been pregnant about a month and a half; that there are eight fluid drachms in one fluid ounce, and that a fluid drachm is a little less than an ordinary teaspoonful. Lucy Godsey further testified that the medicine as taken by her did not produce an abortion, and had no effect upon her save and except to make her sick at the stomach. She also testified that she was 17 years of age, and would be 18 years old the 16th day of February, 1902; that she weighed 123 pounds and that last year she weighed 127 pounds; that she is 5 feet 4 inches tall and has been in good health for the past four or five years, and was able to work in the field and to do general housework; that she had never had any trouble with her monthly periods, and same have always been regular and never gave her any pain; that she had never been pregnant before, and had never tried to produce an abortion.

The above is all the testimony that was introduced by the State and appellant upon the question as to the way and manner in which the prosecuting witness took the medicine in question and the effect it had upon her, as well as the physical condition she was in at the time she took this medicine. There were five physicians who testified as witnesses in this case, two for the State and three for appellant. Dr. T. J.

Murray, witness for the State, testified that the fluid extract of ergot taken by Lucy Godsey, in the way and manner and under the circumstances in which she took it, and the condition she was in at the time she took it, would not be calculated, under these circumstances, to produce abortion.

Dr. Scott Milam, another witness for the State stated that if the ergot was taken by Lucy Godsey in the manner and under the circumstances as stated by her, that it was not calculated to produce an abortion.

Dr. John A. Tuck, a witness for the appellant, was asked the following question: "Suppose you take a girl who will be 18 years old the 16th day of February, 1902, who is strong and healthy and able to work in the house and in the field, and who has been in good health for the past four or five years; her monthly periods have always been regular and gave her no pain or trouble; she weighs from 123 to 127 pounds; is 5 feet 4 inches high, and has never been pregnant before and has never had an abortion produced on her, but she becomes pregnant and is about a month and a half to two months gone in pregnancy, and she takes four teaspoonfuls of fluid extract of ergot, one every three hours for the first day, and each day thereafter she takes a teaspoonful of said medicine three times a day before meals until she takes three ounces of same, but it takes her from Monday of one week to Wednesday of the following week to take said three ounces, and same has no effect upon her except to make her sick at the stomach and cause her to vomit. Now, would said drug in the way and manner described, and by the subject described and for the length of time described, be calculated to produce an abortion?" In answer to said question the witness stated that if taken in the way and manner described, and by the subject described, it would not be calculated to produce an abortion. "If this girl took no more ergot than you say, and took same in the way and manner you described, it would not be calculated, under those circumstances, to produce an abortion.

Dr. Miam and Dr. Murray, State's witnesses, were both asked the same question as above indicated, and both gave the same answer practically as was given by Dr. Tuck.

Dr. L. P. Gibbs and Dr. J. M. Flenniken, witnesses for the appellant, both testified in answer to the same question practically as that propounded to Dr. Tuck, that the ergot, as taken by Lucy Godsey, and under the circumstances under which she took it, and the way and manner in which she took same, would not be calculated to produce an abortion.

*J. J. Hiner* and *E. P. Lea,* for appellant.—The following is taken from the brief on the motion for rehearing:

As we understand the statute of this State on the subject under investigation, the means actually used by the party, and the manner in which such means are used, must be reasonably calculated to produce an abortion; otherwise no offense is committed.

Article 643 of the Penal Code reads as follows: "If the means used shall fail to produce an abortion, the offender is nevertheless guilty of an attempt to produce an abortion; provided it be shown that such means were calculated to produce that result." It is not enough to say that the drug or medicine is an abortifacient, and that under some circumstances it might produce an abortion, to meet the requirements of this statute, but such drug or medicine in the manner in which it is used, in the particular case in question, must be calculated to produce an abortion before the offender will be guilty of violating this act. A pistol is not necessarily a deadly weapon, but by the manner of its use it may become a deadly weapon. A gun is not necessarily a deadly weapon, but by the manner of its use it may become so. Strychnine is a deadly poison when used in a certain way; yet when used in another way it is regarded by the medical profession as one of the best tonics for the human system. Nitroglycerin is a deadly explosive when used in a certain way; yet it is regarded and used by the medical profesion as one of the best stimulants for the heart in heart trouble. And so it is with ergot. When used in a certain way and under certain circumstances it might produce an abortion, and might reasonably be calculated to have that effect; but in order that a party may be found guilty of attempting to produce an abortion by the use of ergot, or any other drug, it must be shown beyond a reasonable doubt that the drug as used in the particular case was reasonably calculated to produce that result. The statute above quoted means this, or it means nothing. It does not make any difference whether ergot under some circumstances and taken by some people would be calculated to produce an abortion; but the question is, what effect would it have when taken by the subject and under the circumstances and conditions surrounding the case at bar? We might concede that a woman four to seven months gone in pregnancy, who should take three or four ounces or a quart of the stuff within twenty-four hours or a week, might miscarry; but what are the facts of the case at bar? How about the law when applied to the facts of this case, when each and every witness, both for the State and the defendant, testified unequivocally that the medicine as used by Lucy Godsey and under the circumstances under which she used it was not calculated to produce an abortion. Are we right in our contention as to the construction of article 643 of the Penal Code in reference to this matter, or is the construction of this statute in the case at bar correct? The court is wrong in the construction of this statute in the case at bar, or it has heretofore construed this statute incorrectly, and in order to sustain its opinion in this case, must necessarily overrule its opinions heretofore and say that this court, as heretofore constituted, has been unable to correctly construe article 643 of the Penal Code.

Now let us see if we can make our assertion good. In the case of Cave v. State, 33 Texas Criminal Reports, 340, Judge Hurt in rendering the opinion of the court used the following language: "This prosecution is based on article 538 of the Penal Code, which reads: 'If the means

used shall fail to produce an abortion, the offender is nevertheless guilty of an attempt to produce an abortion; provided it be shown that such means were calculated to produce that result.' Transposed, if the accused shall use means to produce abortion, which are calculated to have that effect, he is guilty of an attempt to produce an abortion, though the means used shall fail to procure an abortion. Though the accused may intend an abortion, and may use means for that purpose, yet if the means actually used were not calculated to have that effect, he is not guilty."

How does this proposition jingle with the facts in the Fretwell case? It may be conceded that Fretwell procured the drug in question for the purpose and with the intent to produce an abortion; "yet if the means actually used were not calculated to have that effect, he is not guilty," says Judge Hurt.

The opinion of the court in the case at bar, if followed to its logical sequence, means that if a man obtained a drug for the purpose and with the intent to produce an abortion, and if the drug, taken in quart doses every hour until a gallon was taken, would be reasonably calculated to produce an abortion, yet if the same drug taken in teaspoonful doses three times a day, after each meal, would be one of the best tonics known to the medical world, he would be guilty, if he directed that the drug be taken in quart doses every hour, and the patient should take it in teaspoonful doses after each meal. He would be guilty on account of the directions given. We have heretofore insisted, and we now insist, that the intention with which the party administers the drug in this kind of a case cuts no figure as to his guilt, but that the drug as actually administered must be calculated to effect the object intended.

In the Williams case, above referred to, Judge Simpkins in rendering the opinion of the court says: "There is no question that the desire and purpose of defendant in inducing the prosecuting witness to drink the cotton root tea was to produce abortion; but it seems that under the laws of this State the defendant can only be punished when it is shown that the attempt was made by such means as were calculated to produce such result. Penal Code, article 588. That is to say, the means actually used must be proved, beyond a reasonable doubt, to have been such as would ordinarily produce such a result. The medicine actually used on this occasion was cotton root tea. The vital question was, could the cotton root tea that was actually administered ordinarily produce abortion? The court charged the jury that if the defendant administered the cotton root tea to the pregnant woman, with her consent, and the medicine was calculated to produce abortion, the defendant was guilty; that by the term 'calculated,' as used in the statute, was meant 'capable of.' The defendant asked the court to charge the jury that if they had any reasonable doubt as to whether the cotton root tea was sufficiently strong to produce abortion, they should acquit defendant. We are of opinion that the court erred in refusing to give the requested instruction, for it was but the law."

After stating the testimony as detailed by the witnesses in that case, the court says: "By what possible proof, unless their own knowledge, the jury reached their conclusion that the cotton root taken by the prosecuting witness was calculated to produce abortion, does not appear from the record. Certainly, then, their verdict seems to have been against the evidence. * * * For the errors indicated the judgment is reversed and the cause remanded. Judges all present and concurring."

*Rob't A. John,* Assistant Attorney-General, for the State. [No brief for the State found with the record.]

HENDERSON, JUDGE.—Appellant was convicted of an attempt to produce an abortion, and his punishment assessed at a fine of $150.

The State was permitted to prove, over appellant's objections, by prosecutrix Lucy Godsey, that defendant was the father of her unborn child; that he had had sexual intercourse with her and had thereby impregnated her. This was objected to by appellant on the ground that it was immaterial. Aside from the fact that the ground of objection is too general, it occurs to us that the testimony was material, as bearing on the question of motive. If appellant was instrumental in impregnating witness Lucy Godsey, it would afford a very strong inducement for him to produce an abortion on her. We think the testimony was relevant and material.

The State proved by the same witness, Lucy Godsey, that the attorneys representing the State had told her, "to only swear to the truth." The ground of objection stated to this testimony was that the same was not in rebuttal of anything asked by defendant, he not having inquired into any conversation had between witness and State's counsel. It has frequently been held by this court that a ground of objection stated is not a certificate by the judge to the effect that the fact existed which afforded the ground of objection. However, the bill further shows that defendant's counsel had previously asked said witness, "if the attorneys representing the State had not been to see her and talked with her about her evidence, and made an agreement to dismiss her adultery case if she would testify *against* defendant." This evidently involved a conversation between her and said attorneys, and the conversation involved an. agreement to dismiss her adultery case if she would testify *against* defendant. This by itself would suggest that she agreed to testify against defendant regardless of whether such testimony was true or false. Now, we think it could be explained that the agreement was predicated on her telling the truth as against defendant, and that no suggestion was made that she would falsify in order to get the case against her for adultery dismissed.

Bill number 3 shows that on the cross-examination of this witness Lucy Godsey, after she had told how she came into possession of the drug in question, counsel for defendant asked her, "if she had not made a statement to Mr. Lea (one of the attorneys for the defendant) as to how

she came into possession of the medicine in question, and if her state-
ment so made was not entirely different from what she testified on the
stand." The State objected to said question for the reason, that at the
time witness made the statement to said attorney he was her attorney,
and that whatever she may have told him was a privileged communica-
tion. The court sustained the objection. The bill shows that she would
have answered, had she been permitted, "that she told said attorney that
she knew nothing about the way and manner in which her mother came
into possesion of the drug in question; that the first she knew of said
drug her mother gave the same to her, and told her how to take it; that
she did not know how or from whom her mother got it, and if Fretwell
had anything to do with it she knew nothing of it." The court, ex-
plaining this bill, puts his exclusion on the ground that it was a priv-
ileged communication between said witness and her attorney Lea, and
that she could answer the same or not as she pleased, and the witness
refused to answer the same. The bill does not show how the relation of
attorney and client existed between said witness and Lea. If we were
to indulge a supposition in this matter, he may have been her attorney
in the adultery case. But it seems that there was some arrangement
to dispose of that case on her agreeing to testify in this case and tell
the truth as to the same. She was in no danger, so far as that case was
concerned, on her compliance with that agreement; and we fail to see
how that objection was tenable. However, the bill is defective in not
stating what her testimony was as delivered on this trial, and conse-
quently we can not see how the testimony produced would be material
in contradiction or impeachment of said witness. We only know from
the bill that appellant would have proved by her that she got the ergot
from her mother, and that she did not know how her mother came into
possession of said ergot. It is stated that she testified differently while
on the stand, but in what respect is not made manifest. So it is not in
a shape to be revised. The same observations here made are applicable
to the ensuing bill.

The State was permitted to prove by Birchfield that he had a con-
versation with defendant some time in August, 1901, in which defendant
asked witness, "why he did not fly at Lucy Godsey." Witness replied,
"that he did not want to, as he thought she was pregnant." Defendant
replied, "that he did not think so, but if she was it was not much longer
than his forefinger; that if any of his friends got into trouble with said
girl he would help them out." The State also proved by Chapman that
he had a conversation with defendant about the 15th of July, 1901, "and
that in said conversation defendant told him that Lucy Godsey was on
it, and that if he would go up there he (defendant) would put witness
onto it, and help him 'get some.'" This was objected to on the ground
that the same did not throw any light on the transaction under inves-
tigation, and could serve no other purpose than to prejudice the minds
of the jury against defendant. This was a conversation between defend-
ant and these witnesses in regard to prosecutrix, Lucy Godsey, and con-

cerning her pregnancy, and also concerning her virtue. With reference to the feature of pregnancy, as stated before, it occurs to us that it was a material fact in the case; and to show appellant's knowledge thereof furnished the motive for the abortion. Furthermore, his inclination to have another person copulate with her, and that person's refusal to do so, would tend to show that he himself was copulating with her, and if he could get some one else to do the same, it would enable him to shift the responsibility of her pregnancy. Under the circumstances of this case we think it was pertinent to show the facts stated in this bill, as furnishing a motive on the part of appellant to produce an abortion on prosecutrix. The facts are relevant, not only as bearing directly on the main issue, but as proving collateral issues which would have a bearing on the main issue, and thus shed light thereon.

Appellant objected to the hypothetical case put by the State to the witnesses Dr. T. J. Murray and Dr. Scott Milam. The hypothetical case is stated in the bill; the objection urged thereto is, because said hypothetical case put to the witness by the State did not correctly detail the facts and circumstances of the transaction, as testified by Lucy Godsey, the woman upon whom the attempted abortion was made. The facts testified by said witness as constituting the hypothetical case are not stated; consequently we are not advised that the hypothetical case put to the witness did not embrace all the material facts. But if it did not, as held in Burt v. State, 38 Texas Criminal Reports, 397, in the absence of a showing that appellant was denied the right, on cross-examination, to put all the material facts in the hypothetical case, this would not afford a ground for reversal.

Appellant objects to certain charges of the court on the ground that the same were charges on the weight of evidence. As we regard the charges, the part objected to was merely a statement to the jury of what was contained in the information. Nor do we think there was any error in quoting the statute on which this prosecution was based, as it was correctly quoted. In another portion of the charge, the law was properly applied to the facts, and the same was not on the weight of the testimony.

The objections urged to the county attorney's argument show that he used language that was hardly justified by the facts proven, but it does not occur to us that such argument was obviously calculated to prejudice appellant, and no charge was asked expunging the same from the consideration of the jury. The reading of authorities and discussion of the same before the court, in the presence of the jury, is greatly in the discretion of the trial judge, and unless an obvious abuse of the same has been shown, to the prejudice of appellant, the case will not be reversed on this account. The bill presenting this matter does not show such prejudice.

Appellant insists that the testimony fails to support the verdict, because the evidence does not show that ergot, which the testimony shows was administered, was calculated to produce an abortion. In this con-

nection it is strenuously insisted that the testimony shows that ergot is not an abortifacient. The most that can be said in this regard is, that according to the old adage, "the doctors disagreed;" those for the State testifying that fluid extract of ergot is calculated to produce an abortion, and if the same had been taken in the manner prescribed by appellant, it would likely have produced an abortion. The natural effect, as stated by said physicians, is to make the patient sick at her stomach and cause her to vomit, etc. Her testimony shows that it did have this effect upon her. She further testified, that she did not take it as directed, which was to take a teaspoonful of the medicine every three hours until the bottle was exhausted. This would have exhausted the bottle in about three days, whereas, according to the way she took it, it took her about ten days to exhaust the bottle. The bottle contained three ounces. However, the physicians for appellant testified that ergot is not an abortifacient. They testified, also, that said ergot taken as related by the witness,—that is, the three ounces, taking four doses the first day, and then three doses each day during the other nine days, as testified by said witness,—would not be calculated to produce an abortion. But one of them states, "If same had been taken as directed, that is, a teaspoonful every three hours until she had taken the three ounces, it might produce an abortion, but he did not think it would be calculated to do so; that it was possible that it might, but the probabilities were that it would not." Dr. Mann, in his work of Forensic Medicine and Toxicology, pages 122 and 123, concedes that ergot is a drug which had the most claim to be regarded as an ecbolic; but he seems to think that its efficiency in producing an abortion is due to the general toxic effects produced by its use. The general effect of the drug is to produce a contraction of the uterus; and he insists that the experience of most of obstetricians corroborates the proposition that ergot in nonpoisonous doses does not possess the power of developing uterine action in the quiescent gravid state, in the absence of predisposing conditions. He relates, however, several instances in which abortions were produced by ergot when administered in toxic doses; that is, doses calculated to poison a patient. Richeter reports the case of a girl six or seven months pregnant, who took from two to four ounces. She suffered from the symptoms of acute ergot poisoning,—quick pulse, thirst, pain in, the stomach and abdomen, stoppage of the urine, great restlessness,—and half an hour after gave birth to a dead child, and died from profuse hemorrhage. Tardule reports the case of a woman four months pregnant, who aborted in consequence of taking ergot, and died from peritonitis twenty-four hours afterwards. And in another case, reported by Otto, death took place shortly after the expulsion of an embryo five inches in length. Witthaus & Becker in their work on Forensic Medicine and Toxicology, volume 2, pages 120 and 122, are disposed to take the same general view of the effect of ergot as an abortifacient, that is, its efficiency depends on its poisonous effects; that ergot, like most ecbolics, is not certain in its effects, but they concede that ergot is the only

drug with true ecbolic power, and an abortion may be caused by it without poisoning the patient. We quote from this work, as follows: "When the court asks an opinion as to the abortive power of the drug, it is not needful to establish its specific action on the uterus, or its certainty as an abortifacient. It is sufficient to show it is specially liable to set up constitutional disturbances which are apt to terminate in abortion. If such a drug is given to a pregnant woman, but in too small doses to cause abortion, or if it fails because of the peculiar strength and resisting power of the woman, the charge still holds. But if a manifestly inert or unsuitable drug is employed, the charge would not hold good, though there might be a point of law as to the intentions." This expresses our view in better phraseology than we can command. No drug can be considered as a specific abortifacient. Ergot comes nearer being certain in its effect than others. Its tendency is to contract the uterus. If small doses are given, and the subject is healthy, it is not likely to produce an abortion. If large doses are given, and the medicine has a toxic effect, it is likely to produce an abortion. The doses shown to have been prescribed by appellant, that is, an ounce per day, according to the testimony of the State's experts, would likely have produced an abortion. The doses taken by prosecutrix were much smaller and extended over three times the period prescribed by appellant. Though taken in small quantities, according to her testimony, it had a decided effect on her. Of course, we are unable to determine absolutely that the ergot, if taken as prescribed would have produced an abortion, but unquestionably the testimony for the State indicates this would have been its effect; and the books, it occurs to us, support this contention. It was given by appellant for that purpose, and we think the evidence fully supports the verdict. The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—This case was affirmed at a previous day of this term, and now comes before us on motion for rehearing.

Appellant has filed a very able brief on his motion, and strenuously insists that the court erred in affirming the case. He contends that, under the facts, this court was in error in holding that the proof showed that the ergot, as *actually administered,* was calculated to produce an abortion on the prosecutrix. In the original opinion, we held that the means used referred to the doses of the ergot as prescribed by appellant, and did not refer to the doses as *actually* taken by the prosecutrix. There was testimony in the record showing that if prosecutrix had taken the ergot within the three days as prescribed by appellant, that it was calculated to produce an abortion. None of them, however, testified that the medicine as taken was calculated to have that effect. She should have taken the medicine according to the prescription in three days, whereas she took it in small doses and con-

sumed ten days in taking it; and as she actually took the medicine, none of the expert witnesses testify that it was calculated to produce an abortion. The statute does not seem to be predicated *on the means prescribed,* evidencing the intent of appellant, but on the *means actually used;* and this construction of the statute is borne out by the decisions of this court. Williams v. State, 19 S. W. Rep., 897; Cave v. State, 33 Texas Crim. Rep., 335. So, notwithstanding the doses prescribed may have been calculated to produce an abortion as testified by the physicians, yet the doses actually taken by the prosecutrix were not shown to have been calculated to produce an abortion. Appellant's guilt does not appear to be predicated on his intention, but on the actual appliance of the means prescribed. If this were not a correct interpretation, and appellant's guilt depended alone on his intent, he would be guilty if he made the prescription and delivered it to prosecutrix, although she may not have taken any of the ergot. We would further state that our attention has also been called to the three refused charges. If the State had made a case on the testimony, and it became a vital question whether the means used was calculated to produce an abortion, this charge should have been given.

For the errors discussed, the motion for rehearing is granted; and the judgment is reversed and the cause remanded.

*Motion granted and reversed and remanded.*