## LUTHER HUNTER v. THE STATE.

### No. 4519. Decided June 13, 1917.

**1.—Attempted Abortion—Indictment.**

Where, upon trial of attempted abortion, the indictment conformed to precedent, the same was sufficient.

**2.—Same—Rule Stated—Attempted Abortion.**

If the accused shall use means to produce an abortion which was calculated to have that effect, he is guilty of an attempt to produce an abortion, though the means used should fail to produce an abortion. Distinguishing Williams v. State, 19 S. W. Rep., 897, Fretwell v. State, 43 Texas Crim. Rep., 501.

**3.—Same—Sufficiency of the Evidence.**

Where, upon trial for an attempted abortion, the evidence was sufficient to sustain a conviction, there was no reversible error. Following Cave v. State, 33 Texas Crim. Rep., 535, and other cases.

**4.—Same—Newly Discovered Testimony—Bill of Exception.**

Where the bill of exceptions did not properly present the court's refusal to grant a motion for new trial on account of newly discovered testimony, there was no ' reversible error; besides, when considered, the record showed that defendant knew before the trial of the alleged newly discovered testimony. Following Gray v. State, 65 Texas Crim. Rep., 206, and other cases.

Appeal from the County Court of Wise. Tried below before the Hon. J. W. Walker.

Appeal from a conviction of an attempted abortion; penalty, a fine of one hundred dollars.

The opinion states the case.

*Ratliff & Spencer,* for appellant.—On question of insufficiency of evidence: Cited cases in opinion and also Ford v. State, 53 S. W. Rep., 869.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted for an attempted abortion. The indictment is in strict conformity to Mr. Branch's form (2 Branch's Ann. P. C., sec. 1818), and conforms also strictly with the statute (P. C., arts. 1073 and 1071), and is sufficient.

The testimony of both Miss Emma Poore, the prosecutrix, and appellant was that about February 28, 1913, they became engaged to be married; that on June 1st he seduced her and on that day had sexual intercourse with her by virtue of his unlawful seduction of her; that he repeatedly during the next two or three months had sexual intercourse with her. She was then but little over fifteen years of age. That about August 1st he got her pregnant. About September 1st she discovered that her monthlies did not come on, and at once communicated to him her condition. He then told her he would get her some medicine to bring her around all right, or to do away with the child, if she would take it. She told him she would take it. In a short time he took

her a pint bottle of darkish yellow looking stuff, which he told her was cotton root tea; that he made it himself. She did not know what it was, but it tasted a little bitter. That in accordance with his directions and in his presence she drank half of it at one time, and on the same day she drank the other half. Later he inquired what effect it had and she told him it had none. In a day or two thereafter he brought her another bottle which he told her was the same stuff, and she took it at two doses at his direction. A few days still later he went to see her again, and she told him that neither bottle of the medicine he had furnished her, and which she drank as he directed, had produced any effect upon her. He then told her he would go to Fort Worth and would get some out of a drug store that would do the work. In a few days he brought back to her another bottle of medicine, which he said was ergot and that he had gotten it at Fort Worth. This bottle contained a reddish black looking stuff. He told her to take twelve drops of it every three or four hours. She did this for a day or two, but it had no effect. He came back and asked how she was getting along, and she told him. He then told her to take larger doses, which she did in his presence, drinking all that was left in the bottle at one drink or dose, about two tablespoonfuls; and when he found this did not have the desired effect, he told her he would make arrangements with Dr. Blanton to let her have some medicine that would destroy the child and for her to go to see him. In a few days he told her he had seen Dr. Blanton and made the necessary arrangements with him. She then went to Dr. Blanton, told him her symptoms, and he started to fix up something for her. She then asked him if he knew who she was, and he said he did not. She told him who she was, and he then threw up his hands and said: "I can't give you anything. I would be as deep into it as he is"; and he refused to give her anything. In due time her baby was born and was living when this trial was had in January, 1917.

Soon after this appellant left the State and went to Oklahoma. The grand jury indicted him for seduction of Miss Poore. About two years later they brought him back from Oklahoma for trial for seduction. He thereupon offered to marry her, which she indignantly refused after lapse of time and after his outrageous treatment of her, and he thereby succeeded in having the prosecution for seduction dismissed. He was then indicted for this offense and convicted, as stated.

Only one physician testified, Dr. Reeves, who swore that both ergot and cotton root tea, or brew, in certain doses have a special effect upon the pregnant uterus and large doses of either might produce an abortion, and when taken in quantities sufficient to produce an abortion, it would likely make the person sick. That he did not think that ten or twelve drops of ergot taken three or four times a day for several days would be calculated to produce an abortion. That a pregnant woman could take as much as two or three teaspoonfuls or a tablespoonful of ergot and not have any bad results, and yet this much might

produce symptoms leading up to emptying the uterus. That while a half pint of the official fluid extract of cotton root taken internally at one time would produce very marked symptoms and probably death, he did not know about the home brew cotton root, because he couldn't tell what strength it had. That the physical condition of the patient, her age, condition of the stomach as to whether empty or full, and various other things would play a part in the effect a specific dose of either the cotton root preparation or ergot would have if taken internally. That an ordinary therapeutic dose of ergot might be considered anywhere from fifteen drops to a teaspoonful, ordinarily about a half teaspoonful. The usual dose of cotton root is not quite so large, yet it could be given in about the same proportion.

Appellant admitted his engagement to Miss Poore; that by virtue thereof and his promise to marry her, he seduced, and got her pregnant, as she claimed; that he had avoided conviction for her seduction by his offer to marry her when brought back and about to be tried therefor and her refusal to then marry him. · He admitted that he told her he would make her something to cause her to come around all right, and while he admitted telling her what he would get and what he did get and give her as being cotton root brew, or tea, and ergot, he denied that the drugs or stuff he had given her was either of these, but claimed that it was nothing but burnt or scorched sugar and water, and claimed · he made all of it himself and got none of it from any drug store. He denied that he had made any arrangements with Dr. Blanton for her to go and get medicine from him that would produce an abortion. He denied that he ever said a word to Dr. Blanton on the subject either ·directly or indirectly.

The case was tried before the county judge without a jury. Among other things he specifically found the courtship, engagement to marry, seduction of her by reason thereof and his getting her pregnant. That just before he was to be tried for seduction of her he offered to marry her and thereby escape from punishment for that offense. After finding that early in October he called on her and learned from her that after she had taken the first bottle of medicine according to his directions and it did her no good, the judge specifically further found, as follows:

"I find that the defendant on learning that the first lot of medicine given by him to Miss Poore had done her no good, immediately brought her a second bottle of the same kind of colored liquid which he informed her was also extract of cotton root, and directed her to take it all, assuring her that it would certainly set her up; but it did no more good than the first bottle had done, although she took every drop of it.

"I find that the defendant, on learning that his second batch of medicine had not accomplished what he desired, brought to Miss Poore a small vial of a different kind of medicine of a reddish tinge, and directed her to take just a few drops at a time, saying it was ergot, and that if she would take it according to directions it would certainly · do the work, and that she would soon be relieved of her trouble and

distress. But that this medicine, called ergot by defendant, and all of which was taken by Miss Poore, failed as completely, as had the cotton root, to destroy the foetus and produce an abortion.

"I find that the two pint bottles of fluid delivered by defendant to the prosecutrix to be a decoction of cotton root brew; and the small vial of medicine of a reddish tinge, which he directed her to take, to be ergot, and not parched sugar, as testified to by defendant.

"I find that the defendant, when he became aware of Miss Poore's pregnant condition, that he told her to get ready and they would marry on the first Sunday in November, 1913; but that instead of carrying out this promise, the defendant, without intimating his intentions to her in any way, left Texas and went to Oklahoma, where he remained till brought back about two years later in the custody of an officer on a charge of seduction of the said prosecutrix.

"I find that the fluids, when administered in proper doses and under certain conditions will produce abortion of a pregnant woman.

"I find that defendant procured and administered these medicines and induced prosecutrix to take same with the specific purpose and intent of causing her to abort; and that there was at all times a guilty intent in the mind of defendant to procure an abortion upon the said Miss Emma Poore, and that its consummation was defeated wholly or largely by the robust, healthy physical condition of the girl, which enabled her to throw off and eliminate the toxic effect of the drugs and medicines administered to her by the defendant, with intent to accomplish his unlawful and felonious design."

And yet he fined appellant only $100, the lowest punishment authorized by law.

The evidence was amply sufficient to sustain the court's finding and appellant's conviction. Hunter v. State, 38 Texas Crim. Rep., 61; Cave v. State, 33 Texas Crim. Rep., 335.

Appellant relies upon Williams v. State, 19 S. W. Rep., 897, and Fretwell v. State, 43 Texas Crim. Rep., 501, for reversal. The Williams case was reversed because the lower court failed to give one of the defendant's special charges, but this court expressed doubt as to the sufficiency of the evidence to have sustained a conviction because of the testimony of the medical expert witnesses—the doctors. The effect of their testimony in that case was much more favorable to that defendant than the doctor's testimony in this case was. There were also other facts testified to in that case tending to cause the court to indicate the evidence therein might be insufficient. The testimony in the Fretwell case showed that the pregnant woman did not take the medicine as prescribed by the appellant therein but took very much less quantities than he had directed, and the doctors therein testified that as actually taken by her it was not calculated to produce an abortion. The testimony in that case was nothing like as strong as in this case.

The statute (art. 1073, P. C.) prescribing this offense is: "If the means used shall fail to produce an abortion, the offender is, notwith-

standing, guilty of an attempt to produce an abortion provided it be shown that such means were calculated to produce that result." Or, as transposed by Judge Hurt in the Cave case, supra: "If the accused shall use means to produce an abortion which was calculated to have that effect, he is guilty of an attempt to produce an abortion, though the means used should fail to produce an abortion." The statute clearly does not mean that the means used shall actually produce an abortion, for if it did, the offense would not be attempted abortion but would be the complete offense of abortion.

And neither does the statute mean that the means used shall *almost* produce abortion or just *barely fail* to do so before this offense can be committed, but only says: If the means used were *calculated* to produce an abortion. The judge in his special findings of fact found that it was cotton root brew and ergot which appellant administered to Miss Poore, and that said medicines when administered in proper doses would produce abortion, and that he procured and administered these medicines to her with the specific purpose and intent of causing her to abort and that its consummation was defeated wholly or largely by the robust, healthy physical condition of the girl, which enabled her to throw off and eliminate the toxic effect of these drugs and medicines.

The court did not err in refusing appellant a new trial on account of his claimed newly discovered testimony. This matter is not presented by any bill of exceptions. Whether any evidence was heard by the court on this ground of his motion for a new trial is not disclosed, nor if there was evidence, what the evidence was. This would be all that is necessary to pass upon this point, but we will further state the matter as shown by his motion for a new trial.

His motion in effect shows that he knew before the trial that Miss Poore would testify what he told her about Dr. Blanton and of her interview with Dr. Blanton and the result thereof as shown above. He disputed her on this point on the trial, claiming that he did not tell her that he had arranged with Dr. Blanton nor to go to him for medicines and he swore as shown above that he had never said a word to Dr. Blanton either directly or indirectly. He now produces the affidavit, attached to his motion, of Dr. Blanton, wherein he swears: "I do state that he (appellant) has never at any time approached me or asked me in any way to prescribe medicine of any kind for the purpose of procuring an abortion. I never at any time discussed the matter of the pregnancy of Miss Poore with him or anyone representing him. I furthermore state that I never told him what my testimony would be until after he was tried and convicted at Decatur, for the reason that I did not wish to get mixed up in the case." So that it is clearly seen that he knew before the trial what Dr. Blanton would swear if he swore the truth. There is nothing to show that Dr. Blanton would have testified falsely against him. The fact that Dr. Blanton would not tell him what his testimony would be because he did not want to get

mixed up in the case would not make his testimony newly discovered. He could not wait and experiment with the court, and if convicted then claim that Dr. Blanton's testimony was newly discovered. This ground of his motion for a new trial under all the authorities was wholly insufficient to entitle him to a new trial. White's Ann. C. C. P., sec. 1149, and authorities there collated; Gray v. State, 65 Texas Crim. Rep., 206; Stewart v. State, 76 Texas Crim. Rep., 54; Henson v. State, 74 Texas Crim. Rep., 282; Black v. State, 71 Texas Crim. Rep., 625. It is needless to cite the many other authorities.

The judgment is affirmed.

*Affirmed.*