## Clay Lester v. State.

### No. 2229.   Decided February 26, 1913.

**1.—Theft of Horse—Circumstantial Evidence—Sufficiency of the Evidence.**

Where, upon trial of theft of a horse, the evidence was circumstantial, but sufficient to sustain the conviction, there was no error.

**2.—Same—Evidence—Circumstantial Evidence.**

Where, upon trial of theft of a horse, the evidence was entirely circumstantial, there was no error in admitting testimony that the witness met a man riding a horse and leading another within a few hundred yards of the alleged owner's home after sundown; besides, the bill of exceptions was defective in not pointing out the alleged error.

**3.—Same—Charge of Court—Insanity.**

Where, upon trial of theft of a horse, the court instructed the jury that if they believed from a preponderance of the evidence that at the time the defendant took the alleged animal he was laboring under disease of the mind to such an extent as that he did not know right from wrong, and did not know that the act of taking at the time he did so, if he did so, was wrong, to acquit the defendant, and then charged the converse of the proposition, there was no error. Following Leache v. State, 22 Texas Crim. App., 279.

**4.—Same—Charge of Court—Insanity—Date of Trial.**

Where, upon trial of theft of a horse, the defendant pleaded insanity and that he was insane from childhood, and the court properly charged the jury on the question of insanity at the time of the commission of the offense, there was no error in the court's failure to charge specifically on the issue of defendant's insanity at the time of the trial, no affidavit being filed or motion made to submit such issue.

**5.—Same—Charge of Court—Lucid Intervals.**

Where, upon trial of theft of a horse, the evidence did not raise the question of lucid intervals or partial insanity, but it was contended that defendant was continuously insane throughout his life, there was no error in the court's failure to submit this issue or that the defendant was insane at the time of the trial; especially, as the defendant did not request the court to do so.

Appeal from the District Court of Erath.   Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of theft of a horse; penalty, two and one-half years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

C. E. Lane, Assistant Attorney-General, for the State.—On the question of insanity: Hurst v. State, 40 Texas Crim. Rep., 378; Nugent v. State, 46 id, 67; Sartin v. State, 51 id, 571; Smith v. State, 55 id, 563; Tub v. State, 55 id, 606.

DAVIDSON, Presiding Judge.—This conviction was for horse theft. The case is one of circumstantial evidence.   The substance of the evidence is to the effect that Timberlake's horse was taken from his premises, and appellant disposed of the horse shortly afterwards some miles away, and was in possession of it the morning following the al-

leged theft. We deem it unnecessary to go into a detailed statement of the testimony, it being amply sufficient to support the finding of the jury so far as the weight of the evidence is concerned.

The witness Cathcart testified that late on the evening before the 15th of February he was traveling in a wagon with a load of oats, and had been during the day to Mr. O'Neals, close to Alexander in Erath County, where he had gotten the oats. Returning home along the Highland and Dublin road, and when within a few hundred yards of Mr. Timberlake's home, after sundown, he met a man riding a horse and leading another. This was some two or three hundred yards from Timberlake's residence. It was getting dusk and he could not see the horses clearly, but the horse the man was leading was of a dark color, but witness did not notice the animal close enough to describe it further nor did he notice particularly the mane and tail of the horse, nor was he able to tell the size of it. He further stated he did not know the party riding the horse, at least did not notice him as he was in a hurry, and gave the party and the horse the road. He says he could not describe the man riding the horse further than to say he appeared to be a young man, rather slender, squarely built, sitting rather stiff in the saddle. Objection was urged to this testimony because it was heasay, and because witness did not identify the party riding the horse as the defendant, nor the horse being ridden or led as the one alleged to have been stolen, and because the testimony threw no light upon the transaction in question, and because the testimony was irrelevant, and did not tend to connect defendant with the taking of the horse, and was calculated to prejudice his legal rights before the jury. These were all overruled, and the testimony was admitted with the explanation by the court, that this was a case of circumstantial evidence, and the court felt this circumstance admissible along with the others. As the bill is presented we are not able to say that this was error. The court said this was a circumstance to be considered along with the other circumstances in the case. If we were to look to the statement of facts, we are of opinion, while the testimony was not of much moment, still it might be considered along with the other facts, but in any event it was of small matter, and it is not made to appear that this circumstance was not connected up with appellant by the circumstances in the case so as to show this was appellant, and that he was riding or leading Timberlake's horse.

Appellant raises some questions in his motion for new trial, among others, that the court's charge submitting the issue of insanity was not sufficient. The charge of which complaint is made is in the following language: "Now, if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant took the horse described in the indictment from the prosecuting witness, G. W. Timberlake under such circumstances as to constitute such taking theft, and you should further believe from a proponderance of the evidence that at the time the defendant did so he was laboring under disease

of the mind to such an extent as that he did not know right from wrong, and did not know that the act of taking the horse at the time he did so, if he did so, was wrong, then you will acquit the defendant, on his plea of insanity and so say in your verdict.'' The objection to this charge is that it is upon the weight of the evidence, and too general, to-wit: that the court told the jury in effect that if the defendant did not know right from wrong, then they would acquit him, when in law he would be required at the time he took the horse, if he did do so, to know the nature and the quality of his act, and to know and understand the consequences of the same. We are of opinion that the charge is not subject to the criticism urged. The criterion in Texas, we think, was submitted by the court sufficiently for an intelligent jury to understand the law, and if defendant did not know right from wrong, he should be acquitted; and it further emphasizes this fact by informing the jury if he did not know the act in taking the horse, at the time he did so, was wrong, than they would acquit him. Under our authorities we are of opinion that this charge was sufficient. While the charge is not as full as is usually given, still it submits the criterion of the law in regard to the test of insanity. The court gave the opposite or converse of this, that if defendant did know that it was wrong to take the animal and did understand the nature of the act, and that it was wrong in taking the animal, then he could not be acquitted under a plea of insanity. It is contended that this is on the weight of the evidence. We do not concur in this view. It is contended in this connection that the only test given by the court as to this plea of insanity was as to whether he knew right from wrong, regardless of whether or not he had mental capacity to know and understand the nature and quality and the consequences of his act, which in law he must know before he can be punished. Of course, the party must be insane, and this he must show usually by a preponderance of the evidence, otherwise he would be guilty. We do not believe this is a charge on the weight of the evidence, but taking the whole charge together, it was sufficiently specific as not to mislead the jury. See Leache v. State, 22 Texas Crim. App., 279. The Leache case has been followed in regard to this matter in subsequent decisions.

Another contention is, that the court erred in not instructing the jury that if appellant was insane at the date of his trial, they could not convict him on the theory that under the statute no person shall be convicted of a felony if after the commission of the offense he becomes insane. This issue was not in the case, that is, that he become insane after the commission of the offense. All the evidence in the case shows that if he was insane at all, that he was insane from his early childhood, and that it was a continuous and unbroken insanity from childhood to the time of his trial. Where this is the case under the facts it is not error for the court to fail to instruct the jury upon the theory presented by this exception.

In the case of Kirby v. State, 150 S. W. Rep., at page 455, this court decided the question adversely to appellant. That opinion recites: "The next bill relates to the refusal of the court to instruct the jury that, if they believe the defendant was now insane (that is, at the time of the trial), they would so return their verdict and inquire no further. In support of his contention appellant cites us to the case of Chase v. State, 41 Texas Crim. Rep., 560, 55 S. W. Rep., 833; but a careful reading of that case will demonstrate that it holds adversely to his contention. In that case a similar instruction was sought; but the court held that inasmuch as the evidence indicated that defendant in that case was as much insane at the time of the commission of the offense as at the time of the trial, and the court had instructed the jury that if defendant was insane at the time of the commission of the offense to acquit, there was no error. In this case the only evidence as to appellant's insanity at the time of this trial is the testimony of Dr. West, and he testified that he thought appellant was as insane now on that point testified in regard to as he was at the time of the commission of the offense, only that he probably was more violent at the time the offense was committed, and the court instructed the jury that if they found appellant was insane at the time of the commission of the offense to acquit him. Their finding him not insane at the time of the commission of the offense necessarily included a finding that he was not insane at the time of the trial, as all the circumstances upon which it was sought to prove that fact occurred prior to the commission of the offense, and the physician bases his opinion wholly upon those matters." As before stated, in the instant case, if appellant was insane at the time of the commission of the offense, he had been insane for years before, and was insane at the time of the trial, the theory of the defense being that he was insane from early childhood, and the reasons are given in the testimony, which we deem unnecessary to state, but it was the contention throughout the trial that appellant had always been insane. Under this state of case, we are of opinion it was not necessary to charge the jury specifically on the issue of his insanity at the time of the trial, and besides there was no issue made specifically by the defendant, no affidavit filed, and no steps taken to illustrate that question before the jury. It is simply raised on the motion for new trial and criticism of the court's failure to charge that aspect of the law. The question of lucid intervals or partial insanity, or insanity at one time and lucidity at another is not in the case. The insanity, as stated above, covers practically his life up to and including the trial.

It is contended also that the evidence is insufficient to support the verdict. It is stated in the ground of the motion for new trial as follows: "The proof showed by all the witnesses who testified for the defendant and by Dr. Chilton that the defendant was insane at the date of the trial and had been insane for a number of years prior thereto, and the only proof in the case on this question offered by the

State, was the testimony of some witnesses who had lived at Comanche and had seen defendant there for the past two or three years; none of these witnesses claimed to know anything about mental diseases, and none of them claimed to know or understand anything about insanity and were non-experts, while the proof showed that those who had lived with the defendant all his life, and nursed and treated him swore he was and had been 'insane for a number of years.'' This is the statement in the ground of the motion for new trial. The State introduced some evidence showing the defendant was able to attend to business, was not bright, but he was able to drive a delivery wagon and do a few things of that sort, and did perform acts of that character, but during all this time the defendant's evidence went to show that he was insane. While the court might properly have submitted the issue to the jury, yet in the attitude the evidence presents it, as we have stated above, we think it is not reversible error that the court did not submit the insanity of defendant at the time of the trial, especially so as the defendant did not request it to be done, and no affidavit was filed under the statute asking the issue be especially tried by the jury.

Believing there is no reversible error in the record, we are of opinion the judgment ought to be affirmed, and it is so ordered.

*Affirmed.*