JOHN WEHENKEL V. STATE OF NEBRASKA.

FILED FERBUARY 29, 1928. No. 26059.

H. F. Barnhart and Moyer & Moyer, for plaintiff in error.

*O. S. Spillman, Attorney General,* and *George W. Ayres, contra.*

Heard before Goss, C. J., Rose, Good, Thompson, Eberly and Howell, JJ., and Redick, District Judge.

Goss, C. J.

The defendant was charged with the murder of Arthur Carrico with a revolver on June 30, 1926, in Madison county. On December 7, 1926, the jury found him guilty of murder in the first degree and fixed the punishment at life imprisonment. On December 15, 1926, he was sentenced to be imprisoned for life in the state penitentiary. He brought proceedings in error here.

The evidence given at the trial shows beyond dispute that the defendant did the killing at the time and place and in the manner charged. Witnesses who were present at the time of the killing testified that Carrico was shot by the defendant in a garage in Tilden and that three shots were fired by him.

The defendant was a witness in his own behalf and told his grievances of years against Carrico and of the exasperating attitude of the latter toward defendant and in respect of Carrico's debauching of defendant's wife. He testified that, on the day of the shooting, he took a revolver from the cushions of his car and walked into the garage. He detailed a conversation with deceased in which deceased called defendant's wife an opprobrious name and then testified that he could recall nothing more after that. This conversation between the two immediately preceded the fatal shooting.

Self-defense, which is an adequate defense in proper cases, is not indicated by the evidence in this case. So far as any defense was interposed, it was the defense of insanity or amnesia or loss of memory because the deceased had violated the sanctity of his home by the seduction of defendant's wife and had thereby caused the defendant to brood over his marital wrongs and to become so mentally unbalanced as not to be criminally responsible for his act

at the time the killing was done. The so-called "unwritten law," by which is meant the private right to avenge a criminal wrong done to a female member of one's family, or, if sought to be applied here, to avenge a wrong done a spouse in violation of the marital rights of the other spouse, does not exist at common law, nor does any statute of this state recognize it in any way whatever; it is not a defense available to one accused of homicide. 30 C. J. 36, secs. 187, 188. The defendant did not expressly and directly rely on it save only as it was in a large way made use of in his claim of loss of memory or as the cause of his failure to know what he was doing and the moral quality of his act; though with a jury it would probably have all the psychological effect of a legal defense.

The first assignment of error argued in the brief is that the court erred in admitting in evidence, over objection, exhibit 15, which is a letter written by defendant to the wife of a third party, whose name may well be omitted, because we find nothing in the evidence to show that she invited the contents of the letter. The letter was inadmissible and ought not to have been produced. But the record shows that, when this exhibit was offered in evidence, one of counsel for defendant who was in active charge of the trial at the time remarked, "It is all right," and the reporter indicated that the exhibit was received. This waived any right to predicate error upon the admission of the letter in evidence.

Another error assigned and argued is that the prosecutor was guilty of prejudicial misconduct with relation to certain letters probably written by defendant and his own wife. None of these were admitted in evidence, nor are we advised how they came into the possession of the state. No inkling of their actual contents is given us in the briefs, nor do we find any such references in the record. Only one is pointed out as offered in evidence. It is exhibit 14 (and its envelope, exhibit 9, which latter the defendant. without objection, had admitted he wrote). The defendant objected that this was a privileged communica-

tion between husband and wife and the court sustained the objection. In a general objection, counsel for defendant objected to the prosecutor "reciting to this witness the contents of letters before that letter is allowed to be put in evidence, for the reason that it is improper conduct on the part of counsel and it is a violation of the rights of this defendant. It is proper to ask if he wrote this letter." As that was all that was done, except that it was disclosed that it was a letter from defendant to his wife, and the court excluded it, we are of the opinion the defendant was not thereby prejudiced in the minds of the jury. These letters between husband and wife, being privileged, likewise ought not to have been produced.

The next assignment of error is that the court erred in admitting the testimony of Dr. G. E. Charleton, superintendent of the state hospital for the insane at Norfolk, who made a physical and mental examination of the accused, and, in rebuttal, expressed at the trial an opinion therefrom that the defendant was sane. The testimony was objected to because the examination was not made under an order of the court and because accused's counsel was not present and because the examination was *ex parte*. The objection may be treated as referring back to that part of section 12 of the bill of rights of our state Constitution which says: "No person shall be compelled, in any criminal case, to give evidence against himself." The testimony shows that the witness informed the accused that he had been requested by the county attorney to make the examination, that the doctor told him he did not have to answer any question, and that the defendant submitted without objection to the physical and mental tests. We find no case in our court where this question has been decided; none is cited in the briefs. There are numerous authorities to the effect that, where an order of court has first been obtained for an examination of the defendant by physicians, their testimony as to what they discovered, and their opinion as to the sanity of the prisoner, is admissible and does not contravene a similar constitu-

tional provision to the effect that one accused shall not be compelled in a criminal case to give evidence against himself. *People v. Furlong,* 187 N. Y. 198; *State v. Petty,* 32 Nev. 384, and cases cited; 16 C. J. 568. That the evidence is admissible when the defendant submits to an examination without any threats, duress, deception or objection, seems equally well settled; and we may, as applied to this case, deduce the rule that the testimony of a physician as to the sanity of the accused, based upon an examination of the accused, made without an order of court, and without the knowledge or consent of his attorneys, but without objection by the defendant at the time of the examination, is not subject to the objection that the defendant was compelled to give evidence against himself. 16 C. J. 568; *State v. Spangler,* 92 Wash. 636; *State v. Church,* 199 Mo. 605.

While defendant was under cross-examination by the prosecutor, he was subjected to questions, and required to answer them, relating to his own violations of the conventions of the marriage relations. He was required to answer that, before he was married, he had sexual intercourse with a woman and begat a son while the son's mother was the wife of another, that he was sued by the man whose wife and home he had thus violated and was charged with breaking up this man's home and alienating the affections of the man's wife, whom witness married later. The only purpose of this line of questions, as stated by the prosecution during the examination, was that it was "a question of the effect of these things on his mind." We are aware that, when a defendant takes the stand as a witness in his own behalf, considerable discretion is committed to the trial court as to the latitude to be allowed in cross-examination of such a witness. But it should be the disposition of the prosecutor, as it is the office of the judge presiding over such a trial, to see that the witness is so protected that, as a defendant in the case, his rights to a fair trial are not invaded by the introduction of prejudicial evidence. There was only the remotest connection be-

tween defendant's violation of law in committing adultery and the homicide for which he was on trial; and yet the effect of these questions was to try him for both offenses. If the man whose home he despoiled was one favorably regarded by any of the jury, the further effect of the questions and answers was to convict the defendant of murder to redress the irreparable social wrong perhaps also thus far unrequited by any money judgment collected in the case referred to in the questions asked him. "The accused must not be tried for one offense and convicted of another. To make evidence of other acts available in a criminal prosecution, some use for it must be found as evidencing a conspiracy, knowledge, design, disposition, plan, or scheme, or other quality, which is of itself evidence bearing upon the particular act charged." *Clark v. State,* 102 Neb. 728. If the trial of a lawsuit be considered as a game, as so many dominant counsel seem to regard it, with the judge as the referee or umpire, he must hold the players to the rules and guide them with a hand of steel in a glove of velvet. Hitting below the belt or getting out of bounds and an erroneous decision thereon may be lost sight of in a real game, but in a legal controversy they show up when the picture is developed and the proofs are submitted for inspection and review. We derive no satisfaction from the reversal of cases, least of all a criminal case. But we have no choice here; in the last assignment discussed, we think the record shows prejudicial error and that the defendant is entitled to a new trial by reason thereof.

The judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.

Note—See Criminal Law, 16 C. J. 568 n. 11, 588 n. 6; 62 L. R. A. 194; 8 R. C. L. 201: 2 R. C. L. Supp. 574; 4 R. C. L. Supp. 455; 6 R. C. L. Supp. 493.