GERTRUDE WILLIAMS v. STATE OF NEBRASKA.

FILED MARCH 28, 1929. No. 26741.

G. F. *Rose*, J. R. *Shields* and *Prince & Prince*, for plaintiff in error.

O. S. *Spillman, Attorney General*, and *Carroll Thompson*, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD and THOMPSON, JJ., and ELDRED and REDICK, District Judges.

ELDRED, District Judge.

The defendant was convicted of practicing medicine, obstetrics and surgery without a license. The specific

charge of which the accused was convicted being that she did, on or about the 19th day of June, 1927, for fees charged, attend one Nevada Morris in an obstetrical case, and did prescribe and administer medicine and hypodermics to said Nevada Morris. From the sentence pronounced by the court the case is here for review on a petition in error. Plaintiff in error is herein referred to as defendant.

Complaint is made that the state was permitted on cross-examinatoin of Dr. Williams, the husband of the defendant, to show that defendant was present on other obstetrical cases and performed services of a similar character as in the Morris case, the contention being that evidence of such other independent transactions was not only incompetent, but that the inquiry as to such other transactions was not proper cross-examination; and, further, violated the rule that a husband may not be a witness against his wife.

In support of the contention that evidence of other offenses was incompetent, the plaintiff in error cites *Wehenkel v. State*, 116 Neb. 493, wherein it is said:

"To make evidence of other acts available in a criminal prosecution, some use for it must be found as evidencing a conspiracy, knowledge, design, disposition, plan, or scheme, or other quality, which is of itself evidence bearing upon the particular act charged."

The facts in the case cited are clearly distinguishable from the facts in the instant case. The evidence complained of in the *Wehenkel* case related to offenses of a character entirely different from the offense for which the accused in that case was on trial, and was not confirmatory of any evidence tending to establish the crime charged.

As a further reason why the evidence of the other claimed offenses should not have been received, it is suggested that the defendant had been charged with and acquitted of having committed such other offenses. It appears to have been the theory of the prosecution that the

specific act for which the accused was tried was committed pursuant to a scheme or device between herself and her husband to enable her to practice obstetrics without complying with the law. In such case, evidence of other acts occurring so near together in point of time, and being so nearly similar in character as to lead to a logical inference that they are committed in pursuance of some deliberate purpose and scheme planned beforehand, is admissible, even though those acts may constitute another criminal offense. The case is fairly within the rule followed in *Koenigstein v. State*, 101 Neb. 229:

"Under such circumstances the former acquittal of the defendant upon an indictment charging him with receiving a bribe from the keeper of one of such disorderly houses will not exclude evidence of that offense upon a subsequent trial of an indictment for receiving a bribe from the keeper of another such house. Such evidence is allowed only for the purpose of strengthening the evidence of the offense charged in the subsequent trial by showing the general plan or system under which the bribe was received. The two crimes are distinct, and neither is an element of the other. But when such evidence is introduced the defendant should be allowed to prove his acquittal on the former trial."

While we conclude that evidence of the other acts or transactions complained of was competent, had it been properly adduced, we cannot agree that it was properly brought out on cross-examination of the witness Dr. Williams. This witness was called by the defendant and examined in chief and testified as to facts relative to the transaction upon which the prosecution was founded, but was not examined and did not testify as to any other transaction. On cross-examination he was required to testify, over the objection of the defendant, as to facts and circumstances involving other similar but entirely independent transactions, in no manner brought out or referred to on his direct examination. The rule that the right to cross-examine a witness is confined to matters

or transactions brought out on his direct examination, and that evidence to support an independent transaction cannot be elicited on cross-examination, is well established, and obtains in a criminal prosecution the same as in a civil action. If it is desired to examine a witness upon other matters, the parties desiring such examination must make the witness their own, and call him for that purpose.

While considerable discretion rests in the trial court in determining the extent to which cross-examination may be pursued, yet prejudice to the party calling the witness ought not be permitted to result from a violation of the rule. Prejudice resulting from a violation of the rule is apparent in this instance, in view of the fact that the witness being examined was the husband of the defendant. The husband was thus required to become a witness against his wife, within the inhibition of section 8337, Comp. St. 1922, as amended by chapter 75, Laws 1925.

Complaint is made that error was committed on account of attorneys being allowed to assist in the prosecution who were employed or were to be paid by private citizens for their services. The record shows the appointment by the court of counsel to aid in the prosecution. No objection or exception appears to have been made to the order making such appointment. It may be that the prosecution was inspired somewhat by business competitors of Dr. Williams. Dr. Balcom, a witness for the state, testified that he intended to help pay the attorneys who were prosecuting the case. The practice of counsel, who are employed by or are to be paid by private citizens, to assist in the prosecution of a criminal case is not, under our practice, looked upon with favor. However, the right of any counsel to assist in the prosecution of this case was not challenged, nor any ruling of the court asked thereon after it was developed during the trial that the compensation of any attorney assisting in the prosecution was to be paid by private citizens; hence, error therein is not available at this time.

Is the evidence sufficient to sustain a verdict? The law

charged to have been violated provides: "Nothing in this article shall be construed to prohibit gratuitous services in case of an emergency; * * * to nurses in their legitimate occupations; nor to the administration of ordinary household remedies." Comp. St. 1922, sec. 8168. It is contended that the evidence was not sufficient to establish that the services rendered were not within the exceptions above mentioned, all of which were made issues on the trial of the case.

By the instructions the first clause of the proviso was submitted to the jury; that is, whether the services were rendered in a case of emergency. The second and third clauses of such proviso were not submitted to the jury by the instructions. As to the last mentioned exception or clause, three witnesses called by the defense testified on this subject, Drs. Williams, Dewey, and Lueschen, and evidence offered by them tends to support defendant's theory of the case in that particular. Likewise, evidence was submitted by both the defense and prosecution as to the duties of nurses. These questions thus became issues in the case which should have been submitted to the jury and the jury advised that, if such evidence raised in the minds of the jury a reasonable doubt as to the guilt of the defendant, the defendant should be given the benefit of such doubt. The failure to instruct the jury upon these questions withdrew from their consideration essential elements necessary for determination under the evidence.

"Under our practice in a criminal case tried to a jury, no matter how strong the proof of an affirmative fact presented by the state, and notwithstanding there may be no contradiction thereof, still it is for the jury to say whether or not the fact is established." *Osborne v. State,* 115 Neb. 65.

On the question of emergency the court instructed the jury: "If you find that she (defendant) was there in the genuine capacity of a nurse and that the child was born sooner than was expected and before a doctor could arrive, then it would not only be the right but the duty of

the nurse to do what was necessary until a duly qualified physician arrived." It is contended by the defendant that there is no competent evidence that the defendant did not attend Mrs. Morris in the genuine capacity of a nurse, acting in the line of her legitimate occupation. It appears from the evidence that Nevada Morris and the interested members of her family intended to get along without a doctor. Her mother-in-law had had some previous experience in such matters and was going to look after her. She became sick on the morning of the 18th. About midnight it was concluded that they should have some help. Nevada Morris had previously stated that she did not desire a man doctor and expressed the desire that if she had to have anybody she preferred Mrs. Williams. Her husband called the doctor at the request of his mother. He knew that his wife preferred Mrs. Williams to a man doctor. However, according to his testimony and the testimony of Dr. Williams, Ross Morris, the husband, called Dr. Williams over the telephone and told him he needed a doctor. That was about 1 o'clock in the morning. The husband testified that he was advised by Dr. Williams that "he was busy and had to go immediately;" that "he could not come himself, that he was just called out and was starting out of the door." He said: "Would Mrs. Williams be all right?" I said, "Yes; if you cannot get any one else." And he said: "I will have her here and you can get her on the way down; stop at the office and get my suit case." Dr. Williams said he would get there if he could. "My mother asked for help. She told me I had better get a doctor if I could; did not tell me what doctor to get; said they would like to have Mrs. Williams if they could get her; arranged for Dr. Williams to come as soon as he could; Mrs. Williams was at the house, I should judge about an hour; the child was born 20 to 25 minutes after she arrived."

Dr. Williams, who was the only other witness testifying to the employment or the circumstances under which the defendant attended Nevada Morris, testified: Called

me over the phone about 1:30 in the morning; I was at the hospital then; said his wife was sick; they expected a baby at their house. "At that time I asked him who was there to take care of his wife at the present time, and he said his mother, and I asked him if he wanted me to bring a nurse with me, and he said, 'Yes;' he said, 'I would like to have Mrs. Williams come.' And I said, 'All right.' I told him I could not be there just at present, I was up there then ready to get necessary material and instruments ready to go to the country a few miles, and I would be back in 20 or 30 minutes at the most, and I presumed I would have plenty of time to get back." The husband did not say what nurse he wanted. I asked him, and he said he would like to have Mrs. Williams come down. I directed him to get his car and come to my residence and get Mrs. Williams, and on the way back to stop at my office and get the special grip that I have for such cases. "I phoned Mrs. Williams that Morris was coming and to be ready for him, and for her to go down there, and told her to stop at the office with him and get the grip, and I would be back in 15 or 20 minutes;" was not able to get back in that length of time; got back in about an hour; a storm came up and I was delayed, and it was an hour before I got back to town. Went to the telephone to find out if anything was urgently needed; was not back in time to attend case.

There is no other direct evidence as to the capacity or circumstances under which the defendant attended Nevada Morris. There is evidence on behalf of both the state and defendant as to the duties of nurses; and it also appears by the testimony of several witnesses that it is a common and usual practice for doctors retained in such a case to send in advance a nurse to take charge and prepare the patient. A bill was rendered, although not paid, by Dr. C. D. Williams. The written portion of the bill is in the handwriting of the defendant, who acted as secretary in the office of Dr. Williams, but it does not appear that she personally ever collected or attempted to collect

anything for her services. The only other evidence supporting the theory of the state is the inference that may be drawn from the evidence as to the manner in which Dr. C. D. Williams and his wife, the defendant, had been handling his business generally, and particularly in cases of this character. Most of this evidence we have previously held was erroneously received on account of not being proper cross-examination.

The defendant having gone to the Morris home at the request of Dr. Williams, and being advised by him that he was to follow "in 15 or 20 minutes," and a storm coming up which delayed him, the birth of the child being imminent, made this, as far as the defendant was concerned, an emergency case in which she was justified in rendering the assistance for which she may have been qualified; and in so doing she was within the purview of the exception of the statute that it should not apply to "nurses in their legitimate occupations." We are inclined to the view that any inference that might be logically drawn from other facts and circumstances shown by the evidence as to the general method of handling business by Dr. Williams and the defendant was not sufficient to make out a case against defendant in the light of the direct testimony of just how she happened to attend Mrs. Morris on the occasion in question, and that the state failed to establish the guilt of the defendant in this case beyond a reasonable doubt.

Under section 8168, Comp. St. 1922, an emergency exists when the exigency of an obstetrical case is of so pressing a character that some kind of action must be taken before the services of a regularly qualified medical practitioner can be readily procured. *People v. Lee Wah,* 71 Cal. 80. If the defendant was sent as a nurse in advance of Dr. Williams, who was expected to follow in 15 or 20 minutes, as the evidence indicates, and the birth of the child became imminent, on the failure of the doctor to arrive as contemplated, from some unforseen cause, it was the duty of the nurse to render the assistance necessary,

so far as she was qualified, and ordinary humanity would require that she should not be liable criminally for so doing. We conclude that the judgment should be reversed and the case dismissed.

REVERSED AND DISMISSED.