ALLEN CHASE v. THE STATE.

No. 2013.  Decided February 28, 1900.

**Murder—Trials as to Defendant's Insanity—Practice.**

After defendant, who was a deaf mute, had been arrested for murder, it being claimed that he was non compos or insane, the court had a jury impaneled to determine the issue of his mental capacity to commit crime, and the jury having found he was of unsound mind he was released from custody on bail. Afterwards this order was set aside by the court and he was placed on trial for the murder, and on this trial the issue of his insanity was again submitted to and determined by the jury against this defense. Held, the first trial if conceded to be in conformity with the practice under our statutes, was not a final judgment nor conclusive on the issue of defendant's sanity, and he could be again tried for the murder, and upon such trial the issue could again be raised and determined upon his plea of not guilty.

APPEAL from the District Court of Fort Bend. Tried below before Hon. WELLS THOMPSON.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Austin Gibbs, on the 1st day of September, 1896, by shooting him with a pistol.

The defendant was a negro who was deaf and dumb. The record

shows that his animosity to deceased grew out of Gibbs having used his horse and saddle. On the day of the killing he gave the people at his house to understand he intended to kill Gibbs. He got his pistol, went to Gibbs' house, where the latter was alone, broke open the door, went in, and fired twice; came out, and gave parties he met to understand that he had killed Gibbs. In addition to his plea of not guilty, the issue of his mental status—that is, his ability to understand the right and wrong of the act he had committed,—was fully investigated and fully submitted by the court to the jury. There was some conflict in the testimony on this issue, but the preponderance of the testimony showed him to be of sound mind and fully competent to transact business and understand right from wrong. He was a married man and devout church member.

The other issues discussed in the opinion are fully presented as to the facts and circumstances connected with them.

*C. C. Everett,* for appellant, filed an able brief and argument.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty years, and prosecutes this appeal. Appellant is a deaf mute; and it was claimed he was non compos,— that is, he did not have sufficient capacity to commit crime,—and that he did not have sufficient capacity to be placed on trial after the commission of the offense. It appears the judge of the District Court, prior to the trial of this case, was induced to impanel a jury to try defendant as to his mental capacity to commit crime or to be tried therefor, and that the jury so impaneled held appellant was of unsound mind, and he was then released by the judge on bail. Subsequently the learned judge set aside this order, and appellant was placed on trial for the offense. The court appointed two able lawyers for his defense. On his arraignment, being deaf and dumb, he stood mute. Whereupon the court ordered the plea of not guilty to be entered on his behalf. Appellant, by his attorneys, objected to the trial of appellant, saving exceptions thereto at every stage of the proceeding. The court, however, proceeded with the trial, and submitted the case to the jury; and, among other things, the question of appellant's sanity—that is, his capacity to commit crime—was also presented to the jury, both by evidence and in the charge of the court. The trial resulted in a verdict, as above stated, as against defendant of murder in the second degree.

The only question necessary to be considered is the action of the court trying defendant under the circumstances above stated. It is urgently insisted by counsel for appellant that, the court having sub-

41st Crim. Rep.—36

mitted the issue of his sanity to a trial jury prior to the trial, their verdict was final and binding. We are referred by appellant, in support of this contention, to the case of State v. Harris, 78 American Decisions, 272; and, also, Kinloch's case, cited in note to Baughm v. State (Georgia), 38 Lawyers' Reports Annotated, 586 (same case, 28 Southeastern Reporter, 68). In the first named case, it appears Harris, like appellant in this case, was deaf and dumb; but it was shown he could be made to understand certain arbitrary signs. The procedure was adopted in that case of trying the issue of insanity in the first instance. The jury found in favor of appellant,—that he was not capable of committing crime. His case was appealed by the State to the Supreme Court of North Carolina; it being contended that, notwithstanding the verdict of the jury, appellant could be put on trial. The action of the lower court, however, was upheld. In discussing the question, the court refers with approval to two English cases: Rex v. Tyson, reported in Russ. & R., 523, and Rex v. Pritchard, 7 Car. & P., 303. If we had a rule of procedure in cases of this character marked out by statute, authorizing this method of trying such issue, then it should be pursued. Our statute authorizes, where a defendant becomes insane after conviction, and same is made known to the court, etc., that a jury shall be impaneled to try the issue. But this is after conviction, and evidently where the party becomes insane after the trial and before he is sentenced. This issue, it appears, is to be tried in the same court by a jury impaneled for that purpose. See Code Crim. Proc., arts. 982-995, inclusive. Our statute (article 39, Penal Code) provides as follows: "No act done in a state of insanity can be punished as an offense. No person who becomes insane after he committed an offense, shall be tried for the same while in such condition. No person who becomes insane after he is found guilty, shall be punished for the offense while in such condition." So far as we are advised, however, the statute does not mark out any course of procedure as to a person who becomes insane after he commits an offense, except it says he shall not be tried for the same while in such condition. We might, by analogy to the procedure adopted with reference to the trial of this question of insanity after conviction and before sentence, deem it proper to pursue that method of trial. And it seems the court in this instance undertook to pursue that method. But this would not be the sole method of the trial. This issue could be submitted to the jury under the plea of not guilty (Code of Criminal Procedure, article 974), and the jury instructed to determine the issue of insanity in the first instance, and, if they determine defendant was insane at the time of the trial, to return such special verdict; and in such case appellant could not be tried until he had become sane, or at least put on trial again. This issue would have to be passed on by the jury again. We understand in this case, that it is not claimed appellant became insane after the commission of the offense; but the contention is he has always been insane. It

is not urged that, because he was deaf and dumb merely, he could not be punished for crime; but it is urged the impairment of his intellect must be such as that he is insane,—that is, not possessed of a sufficient capacity to know right from wrong. Now, if we concede appellant had formerly been put on trial on the issue that he had become insane after he committed the offense, and could not be tried, this would not operate as a final judgment on the status of appellant, but he could be put on trial again on this issue. And this is what we understand was the course which the court pursued in this matter. By this action he was not deprived of any right to which he was entitled under the law. But like any other· prisoner, when he stood mute, his plea of not guilty was entered for him, which is provided for by statute. He was also furnished by the court with counsel, learned in the law, for the protection of his rights, not as was anciently the practice; and they were authorized to interpose for him, under his general plea of not guilty, his defense of insanity. This defense was relied on, and evidence on this matter was adduced. There was no question as ·to the commission of the homicide, and under the circumstances it was murder of either the first or second degree; and the only real inquiry in the case was as to the sanity of appellant. It was shown by him that he had been deaf and dumb all his life, and by some witnesses that he was of weak understanding. One or two went so far as to say that he did not know the difference between right and wrong. On the other hand, the State showed for one incapacitated as he was, not being able to hear or talk, he was exceedingly bright; that he could make all his ordinary wants understood by means of the rude arbitrary signs to which he was accustomed, and that he could understand others by such signs, who were familiar with him. He had a wife and family, and seemed to be able to care for them; attending to his ordinary business affairs about the farm. These witnesses not only testify to facts, but give their opinion to the effect, that he knew it was wrong to kill a man. This issue was directly presented to the jury and submitted by the court in his charge, and they found against appellant; and we hold, even if it be conceded that he had formerly been properly tried by a jury on the question of his insanity, under the orders of the court, that this was not a bar to his subsequent prosecution for the offense; and that it was entirely competent for the court to do what it did in bringing him to trial and guaranteeing him, as was done, his full defense of insanity under his plea of not guilty. We find no error in the record, and the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled March 14, 1900, without a written opinion.—Reporter.]