## Tom Johnson v. The State.

### No. 1021. Decided March 15, 1911.

Rehearing Denied May 10, 1911.

**1.—Theft from the Person—Continuance—Bill of Exceptions.**

Where there was no bill of exceptions in the record on appeal, the question as to overruling the motion for continuance could not be considered.

**2.—Same—Bills of Exception.**

Where, upon appeal from a conviction of theft from the person, there were no bills of exception with reference to the exclusion of testimony or the conduct of the county attorney, the matters could not be considered.

**3.—Same—Newly Discovered Evidence.**

Where, upon appeal from a conviction of theft from the person, the defendant did not show proper diligence in securing the alleged absent newly discovered evidence, there was no error.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of theft from the person; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Horace Williams,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was charged by indictment in the Criminal District Court of Dallas County with committing theft from the person, was convicted on the 15th day of September, 1910, and his punishment assessed at five years confinement in the penitentiary.

The indictment properly charges the defendant with the crime of theft from the person. The charge of the court is full, and properly submits the law applicable to the charge and the facts proven.

There are no bills of exception in the record, and appellant presents his complaints in his motion for new trial. The prosecuting witness, Charles Cunningham, testified that appellant approached him in the city of Dallas on the night of the 5th day of October, 1909, stopped him and asked him where he was going; that he, witness, told appellant that he was looking for a rooming house, and that he (appellant) told him to get in his hack and that he would drive him to a good lodging house; that he got in the hack; that appellant drove him to an out of the way place in the dark, stopped the hack, got out and called for fare; that as it was dark around there he, witness, said to appellant, "This is a hell of a place to take a man for a rooming house;" that appellant replied, "Well, this is a money-making

scheme;" that he, witness, then pulled out of his pocket a $5 bill to
pay his fare; that appellant snatched the bill out of his hand and
then put his arm around witness' shoulder and said that he was going
through witness; that appellant searched him and took from him all
his money, a $10 bill and $1 in silver which, with the $5 bill
snatched from him, made $16 taken from him; that his money was
taken without his consent; that the money taken was legal tender
money of the United States and passed current as money of the
United States of America; that witness hollered and appellant jumped
in his hack and whipped up his horses and ran off; that there was
at no time anyone else in appellant's hack with him.

Joe Austin, for the State, testified that he is a detective; that on
October 5, 1909, he saw Charles Cunningham at the city hall in
Dallas; that he reported that he had been robbed; that he gave a
description of the man who robbed him, and the horses which the
man drove; that from the description given he, the detective, decided
that the man who did the robbing was Tom Johnson, appellant; that
he went and asked appellant's brother who it was that was driving
the hack with the yellow horses, and that the brother said it was
Tom Johnson; that he then wired to Fort Worth and had appellant
arrested; that he did not know why appellant had gone to Fort
Worth.   William Bryce, a policeman of Dallas, testified substantially
as did Austin.

Appellant, in his own behalf, testified and admitted that Charles
Cunningham was in his hack on the night of October 5, 1909, but
denied he had robbed said Cunningham.   He further testified that
Cunningham had told him he wanted a sporting woman; that as they
drove down the street they saw a woman coming up singing and
that Cunningham said, "Come here, baby;" that he had him to stop
and the woman got in the hack and Cunningham said, "Drive down
where we can get something to drink."   "I drove on back and went
up Commerce Street up by the Santa Fe depot, and he gave me a
dollar and I went in a saloon and got four pint bottles of beer and
a pint of whisky; that is the only money I handled of this man's
at all. . . .   When we got to the corner of Young and Austin
Streets the girl opened the door and jumped out and Cunningham
jumped out on the other side and said, 'I have been robbed;' I asked
him who robbed him and he said she did.   She ran off and I started
after her. .     . I never got a cent for my work.   I told my
brother about it, but I had occasion to go to Fort Worth the next
day.   I wanted to see some people there and I had an engagement
to go to the show. . . .   I caught the interurban newspaper train
to Fort Worth.   I was arrested the next morning at Fort Worth.   I
did not know what for.   I waited until Austin came over from Dallas
and he told me I was arrested for robbing this man.   I never was
more surprised in my life."

As stated above, appellant presents his complaints in his motion

for new trial, the first of which is that the verdict and judgment rendered against him are contrary to the law and the evidence, and are unsupported by the law or the evidence. The evidence was sufficient upon which to base a verdict.

Second, that the court erred in overruling appellant's motion for continuance as shown by defendant's bill of exceptions No. 1. There are no bills of exception to be found in the record; nor is there any motion for a continuance in the transcript.

Third, that the court erred, to his injury, in the admission and exclusion of testimony shown in bill of exceptions No. 10. No such bill is in the record.

Fourth, that the court erred to the injury of appellant in permitting the county attorney to swear the witness Fanning, during the closing argument of the county attorney, upon a material issue, to wit: the question whether the witness Cunningham was drunk or sober on the night of the 5th of October, 1909, as shown by defendant's bill of exceptions No. 11. There is no such bill in the record.

The last and most serious contention is that the court erred in refusing to grant the defendant a new trial on the ground of newly discovered evidence, the materiality of which is alleged. To this contention we have given serious consideration. If a defendant has been guilty of no neglect, and after conviction new matters and evidence are made known to him, that might and probably would result in a different result, he ought to be granted a new trial, but no defendant ought to be permitted to speculate on the result of a trial; to neglect to summon his witnesses, go to trial, hoping to secure an acquittal, and in the event of failure to do so, then bring forward the witnesses to be used as a means to secure a new trial. But if the circumstances indicate a condition of this character, we should be slow to overrule the judgment of the trial court in this matter. He is on the ground, knows the conditions, and in many instances acquainted with the witnesses, and can better judge of the probable truthfulness of the alleged new testimony than can we. In this case the prosecuting witness testified that there was no woman in the hack with him, and he had not given the defendant any money to get him beer and whisky. The defendant swore there was a woman in the hack, and that the prosecuting witness gave him a dollar, and he went into a saloon and paid for the liquor, and the bartender brought it out. The defendant on his motion for a new trial files the affidavit of the bartender, corroborating his statement to the extent that he carried liquor to a man and woman, but does not identify the prosecuting witness as the man, and alleges it as newly discovered testimony. The defendant was arrested and indicted in the fall of 1909. He was not tried until in September, 1910. During all this time he knew this fact. The bartender during the trial of defendant was in Dallas, virtually in a stone's throw of the courthouse where the defendant was being tried. He could have secured his attendance on the trial

in ten minutes' time. He did not do so, and made no attempt to secure his attendance. Again, he files the affidavit of the man who arrested him, that defendant had two tickets to a show and had given them to him when arrested, as corroborative of his testimony that he went to Fort Worth on the night of the alleged robbery to attend a show, and not as a matter of flight, when the prosecuting witness raised the cry of robbery, and that appellant had robbed him. Defendant knew this as well before as after the trial, and the witness was not so far away but what his attendance could have been secured during the trial in a few hours' time. He was an officer and easily found.

Appellant also filed the affidavit of W. C. Hubbert that on the night in question he loaned defendant $20, as accounting for the money in defendant's possession at the time of his arrest. If anyone knew that fact, defendant ought to have done so, and the witness was in the town where defendant was tried. This can hardly be called newly discovered evidence. Virge Conway, Harve Smith and W. C. Hubbert testify that on the night of the robbery a man (not claiming they knew it was this prosecuting witness) did certain things. To make it material, the statements ought to show in some particular that this prosecuting witness was the man. He on the trial denied all parts of these things about which he was questioned, and denied being in any saloon. Two of these witnesses say the man they are talking about was in Del Monte saloon, and the prosecuting witness is not shown to have been in that or any other saloon that night. The other two affidavits, Harve Smith and Virge Snyder, do not claim to know the prosecuting witness, and do not attempt to say that he was the man present at the occurrence they testify in regard to. The witnesses file an affidavit to occurrences ten months prior, and fix the time by the fact that defendant was arrested next day. It is not shown how many men defendant had in his hack that night. He run a regular hack in the city of Dallas. The prosecuting witness reported that night he was robbed by defendant in a few minutes after the occurrence. He positively identifies the defendant as the person who robbed him. Defendant was arrested in Fort Worth a few hours thereafter, having taken an interurban car at three o'clock in the morning. Defendant was not placed on trial until ten months thereafter; nearly all the witnesses could have been secured on the day of the trial, and defendant could not help knowing a majority of the things he now seeks to prove, and known the witnesses, and that they were in reach of process. These matters are left largely to the discretion of the trial court, and under the facts of this case we will not disturb his judgment. Burns v. State, 12 Texas Crim. App., 270; Shaw v. State, 27 Texas, 750; McVey v. State, 23 Texas Crim. App., 659; Fisher v. State, 30 Texas Crim. App., 502.

Defendant admits that much of his testimony is not newly dis-

covered. The witnesses do not claim to identify the prosecuting witness as the man they are talking about.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied May 10, 1911.—Reporter.]