FOLEY FORD GEPHART V. STATE.

No. 25,462. February 27, 1952.
Rehearing Denied May 21, 1952.
Apellant's Second Motion for Rehearing Denied
(Without Written Opinion) June 18, 1952.

Hon. Chas. O. Betts, Judge Presiding.

*Hobart Huson, Jr.,* San Antonio, for appellant.

*Bob Long,* District Attorney, *Thomas D. Blackwell,* Assistant District Attorney, and *George P. Blackburn,* State's Attorney, all of Austin, for the state.

MORRISON, Judge.

The offense is rape of a female under the age of eighteen years; the punishment, death.

The prosecutrix testified that she was eight years old; that she had met appellant, a school teacher, at the city playground during the summer preceding the day charged in the indictment; that, on the Saturday following Thanksgiving in 1949, appellant had come to her parents' home with an eight or nine-year old girl, who he claimed was his niece, gotten her sister, aged nine, and her brother, aged ten, and her and carried them all to an apartment on Leon Street in the city of Austin.

Prosecutrix testified that appellant instructed them all to disrobe and go into the shower; that appellant disrobed; that he took the eight or nine-year old girl, named Annie, into a bed room; that the door was left open a crack; that she and the other children watched what took place in the bed room; and that appellant had intercourse with Annie, describing the act fully. Prosecutrix related that, after appellant had finished with Annie, he called her sister Helen in and had intercourse with her, at the conclusion of which he bit her on the private part; then sent her out, called prosecutrix in, placed a towel between her and the sheet and repeated the act on her, using something like vaseline on her private part before beginning. Prosecutrix told that, when appellant had finished with the girls, he called her brother in the bed room and "did it to him in the back," at the conclusion of which he instructed them all to get dressed and warned them not to tell what had taken place, threatening harm if they did and promising presents if they did not. She said that she and her sister Helen had been with appellant to the Leon Street apartment several times before and to other places, and that on each occasion he had had intercourse with both of them.

Prosecutrix's sister Helen testified, and, without repeating the sordid details, it is sufficient to say that she accurately cor-

roborated prosecutrix's testimony. She further testified that appellant had told her that he did not live in the Leon Street apartment, but that he had charge of it for the owner; that she and her brother and sister had, some time later, reported appellant's conduct toward them to a park leader at Ramsey Park.

Prosecutrix's brother also testified, giving the same account of what took place at the Leon Street apartment, adding that at sometime during the afternoon appellant had tried to get him to have intercourse with one of the girls.

Dr. White testified that he examined the prosecutrix on April 8, 1950, and found that "the female organs of this child had been penetrated by some large object, and the hymen was ruptured."

Mr. Flowers testified that on April 5, 1950, he had been acting as park director at Ramsey Playground; that he knew the three children who had testified; that for several days prior thereto they had been following him around, seemingly waiting for an opportunity to tell him something; and on that day had finally reported the acts of rape by appellant to him. He further told of having seen appellant with the children in the park. He told of reporting the matter to the police.

Both the father and mother of prosecutrix testified that they had twelve children; that the father was a painter and worked during the day, and the mother worked at night; that they had first become acquainted with appellant during the summer of 1949 when he came home from Ramsey Park with some of their children. They related that appellant had been back to the house several times and had carried the children away, under the pretense of taking them to the show or for a ride, one of such times being around Thanksgiving. They stated that the first thing they knew of any acts of impropriety toward their children was when Mr. Flowers, the park director, reported the same to them.

We shall attempt to discuss the twenty-five bills of exception in the order advanced by appellant.

Bill of Exception No. 22 complains of the court's failure to grant his Amended Motion for New Trial, alleging that the evidence did not support the verdict, the death penalty, and

that the same was contrary to the preponderance of the evidence relating to the question of appellant's sanity.

We have recently held in Ross v. State, 153 Tex. Cr. R. 312, 220 S. W. (2d) 137; McGee v. State, 155 Tex. Cr. R. 639, 238 S. W. (2d) 707; and Wenck v. State, 156 Tex. Cr. R. 50, S. W. (2d) 793, that the question of insanity was a question of fact for the jury; and, if there is evidence to support their verdict, we will not disturb the same.

The same rule applies to the jury's finding on the plea of alibi.

We hold the evidence sufficient to support the verdict.

Bills of Exception Nos. 1 and 2 complain of the court's overruling appellant's Plea in Bar and his Second Motion for Continuance.

So that this question may be properly understood, we develop here the chronology of events from the record.

On February 20, 1950, an affidavit alleging appellant to be a person of unsound mind was filed in the county court of Fayette County.

On February 28, 1950, a jury in said court found appellant to be of unsound mind, and he was committed to the Austin State Hospital.

On April 5, 1950, prosecutrix made complaint to Mr. Flowers that she had been raped during the preceding fall.

On April 29, 1950, the county court of Travis County entered an order finding appellant to no longer be of unsound mind and restoring his sanity, and on or about that date appellant was released from the Austin State Hospital, and was later arrested in New Jersey.

On May 4, 1950, the grand jury of Travis County returned the indictment herein, charging the offense of rape to have been committed on November 19, 1949.

On September 27, 1950, a motion to set aside the order of the county court of April 29, 1950, restoring appellant's sanity,

was made and an appeal taken from his refusal to set the same aside. The pendency of this appeal was alleged as grounds for continuance on October 3, 1950, when the case was called.

On October 3, 1950, a jury was empaneled in the district court of Travis County to try the question of appellant's sanity. On October 5, 1950, they returned a verdict finding him sane.

Appellant's contention under Bill of Exception No. 1 seems to be that he could not legally be put to trial because of the prior adjudication of insanity in Fayette County, as shown above. This contention has been decided adversely to him in Chase v. State, 41 Tex. Cr. R. 560, 55 S. W. 833. See also Apolinar v. State, 92 Tex. Cr. R. 583, 244 S. W. 813.

Bill of Exception No. 2 complains of the overruling of his motion for continuance on the grounds that there was pending an appeal from the refusal of the county court to set aside the judgment restoring appellant's sanity. This contention has been held adversely to appellant in Warren v. State, 96 Tex. Cr. R. 627, 259 S. W. 575, wherein we said:

"There was no error in the refusal of the court to delay the trial pending an appeal from the verdict of the jury upon the preliminary inquiry into the sanity of the appellant."

We note that the trial court herein had the power to adjudicate the question of appellant's sanity, and did so adjudicate the question twice. We do not agree that this trial should have been delayed to await the outcome of an appeal on the same question. Further, it will be noted that this was not a statutory motion and was addressed to the discretion of the trial court.

Bill of Exception No. 3 again complains of the court's overruling of appellant's Plea in Bar and is based upon the contention that, since the jury in the county court of Fayette County found, in answer to Special Issue No. 4, "How many attacks of insanity has he had, and how long has the present attack existed?" the following, "2 times and 7 years present attack," this became a res judicata on the question of appellant's insanity for a period of 7 years prior to February, 1950.

Appellant recognized that Witty v. State, 69 Tex. Cr. R. 125, 153 S. W. 1146, is authority against his contention, but seeks to have us overrule the same. This, we are not inclined to do. In that case, the homicide for which appellant was being

tried occurred in July. In September following, appellant was tried in the county court on a complaint of lunacy, and the jury found him to be of unsound mind and, in answer to Issue No. 4 above, that appellant had been insane for 10 or 12 months. There, the court said that such a finding was not a bar to prosecution, but was presumptive evidence of insanity, and that the jury should have been so instructed. We note that the trial court instructed the jury in accordance with the holding in the Witty case.

Bill of Exception No. 9 complains of the admission of the testimony of Drs. Kuehne and Hanretta on the grounds that appellant was under arrest at the time the witnesses examined him and no warning was given him prior to such examination. It will be seen from the bill that it came to the attention of the district attorney on September 27, 1950, that the defense of insanity would probably be interposed; and, pursuant to this information, the district attorney, in preparation for the trial in the instant case, made arrangements to have appellant examined by these two psychiatrists. On September 30, 1950, appellant, while in the custody of the sheriff, was so examined without an order of the court and without having been given the statutory warning. Dr. Kuehne testified that he told appellant that he was there at the request of the district attorney to talk to him and that appellant answered his questions willingly.

In ruling on the admissibility of the testimony of the psychiatrists, the court said:

"Insofar as the testimony of witness or witnesses applies to the defensive issue of sanity or insanity, either at the time of the alleged commissison of the offense or at any other time, I will overrule the motion and give you your bill. I will sustain it insofar as it might apply to any matters concerning the commission or non-commission of the acts alleged comprising the essence of the offense."

Appellant contends that such testimony was secured in violation of the Federal and State Constitutions and Article 727a of the Code of Criminal Procedure, on the grounds that he was required to give evidence against himself.

In order to understand this question, it will be observed at the outset that the defense of insanity was actually interposed, and both doctors appeared as witnesses; but neither attempted to testify as to anything appellant may have said during the

course of their examination, their testimony being confined to their conclusions concerning his sanity drawn from such examination.

There seems to be a divergence of opinion in other jurisdictions on the question of admissibility of this evidence. After analyzing our former holdings, we align ourselves with the jurisdictions which hold, in cases where insanity is a defense, that physicians or psychiatrists, at the instance of the prosecution or the court, may be allowed to make an examination of the accused while in jail and then give as evidence their opinion or conclusions as to his mental condition. Ann. Cas. 1912D, pp. 228, 229; 164 A.L.R. 967.

This procedure has been authorized in some jurisdictions by statute, such as New York, Colorado, Indiana, Massachusetts, Wisconsin and Oregon; and, therefore, a discussion of the cases arising in such jurisdictions would not be pertinent in a Texas case, since we have no such statute.

We proceed, however, to discuss some of the authorities which arose in jurisdictions which, so far as we can determine, have no legislative authorization for the procedure invoked herein.

In Wehenkel v. State, 218 N. W. 137, from the Supreme Court of Nebraska, we find the following:

"The next assignment of error is that the court erred in admitting the testimony of Dr. G. E. Charleton, superintendent of the state hospital for the insane at Norfolk, who made a physical and mental examination of the accused, and, in rebuttal, expressed at the trial an opinion therefrom that the defendant was sane. The testimony was objected to because the examination was not made under an order of the court and because accused's counsel was not present and because the examination was ex parte. The objection may be treated as referring back to that part of section 12 of the bill of rights of our state Constitution which says: 'No person shall be compelled, in any criminal case, to give evidence against himself.'

"* * * and we may, as applied to this case, deduce the rule that the testimony of a physician as to the sanity of the accused, based upon an examination of the accused, made without an order of court, and without the knowledge or consent of his attorneys, but without objection by the defendant at the time

of the examination, is not subject to the objection that the defendant was compelled to give evidence against himself. 16 C. J. 568; State v. Spangler, 92 Wash. 636, 159 P. 810; State v. Church, 199 Mo. 605, 98 S. W. 16."

While we do not fully agree with that part of the opinion which relies upon the consent of the accused, we do find ourselves in accord with the ultimate holding of the court.

In State v. Church, 98 S. W. 16, from the Supreme Court of Missouri, we find:

"The point is made that error was committed in allowing certain physicians to visit the jail and examine the defendant and then give evidence for the state as to his mental condition. But we are unable to agree to this contention."

In State v. Spangler, 159 P. 810, from the Supreme Court of Washington, we find:

"Objection is made to the testimony of Dr. D. A. Nickelson, a specialist in nervous and mental diseases, who was permitted upon the trial to give his opinion as to the appellant's sanity at the time the offense was committed, based upon an examination made of the appellant, and also upon the facts as they appeared upon the trial from the testimony of other witnesses. This witness examined the appellant while he was in jail awaiting trial, with the knowledge of the sheriff and at the request of the prosecuting attorney, but without the knowledge or consent of the appellant's attorneys. The evidence does not show the nature or extent of the examination. Neither does it show that the defendant was unwilling that the examination take place. No evidence was offered of any act done by the appellant or statement made by him. In brief, the evidence only showed that the examination was made, and that, based upon such examination, and upon the facts as they appeared from the testimony of other witnesses, he was of the opinion that the appellant was sane at the time of the homicide. This evidence was properly admissible, unless the fact that the witness' opinion, as shown by the question, was based, not alone upon the examination, but also upon the testimony of other witnesses, renders it incompetent."

In State v. Coleman, 123 S. E. 580, from the Supreme Court of West Virginia, we find:

"Ordinarily the result of a physical examination made without

consent of the accused is not admissible in evidence, but we find the weight of authority in this country is to the effect that where the defense of insanity is made, evidence of the facts disclosed by a physical and mental examination of accused by physicians either prior to or during the trial, with or without his consent, does not violate the constitutional privilege of accused not to be a witness against himself."

We find that in Texas it has long been the rule that "proof of statements and acts made and done while defendant is in confinement or custody and which is not of a criminative character in connection with the case on trial is admissible on the issue of insanity, whether the defendant be warned or not." Adams v. State, 34 Tex. Cr. R. 470, 31 S. W. 372; Burt v. State, 38 Tex. Cr. R. 397, 40 S. W. 1000. We see no essential distinction between the Burt case and the case at bar.

We find that the trial court had this general rule in mind when he passed upon the admissibility of the testimony, as is shown above.

Bill of Exception No. 20 complains of that portion of the court's charge in which he instructs the jury concerning the state's election.

It will be noted that the appellant had moved the court to require the state to elect as to which transaction it would rely upon for a conviction. It is also shown by the bill that no objection to this portion of the charge was made at the time it was submitted, but was raised for the first time in appellant's Amended Motion for New Trial.

Article 658, C. C. P., relating to the court's charge, reads, in part, as follows:

"Before said charge is read to the Jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection."

In Note 67, under the above article in Vernon's Annotated Code of Criminal Procedure, we find numerous authorities holding that objections to a charge first urged in a motion for new trial come too late.

Bill of Exception No. 24 complains of the court's refusal to

grant his motion for new trial based upon newly discovered evidence.

Attached to the motion are several affidavits, among them that of appellant's attorney, in which he outlines the diligence exercised in attempting to get medical testimony in behalf of his client on the original trial, together with the affidavits of several doctors.

In the attorney's affidavit, we find the following with reference to the allegedly newly discovered witness Dr. Bolding:

"I primarily wished to discuss the matter with Dr. Bolding * * *. Upon contacting Dr. Bolding and announcing my purpose, I was immediately demanded to leave his office, with the absolute refusal on Dr. Bolding's part to discuss this case with me."

Attached thereto is an affidavit of Dr. Bolding in which he does not mention his refusal to discuss the case with appellant's attorney, but in which he says that if he had been present at the trial he would have testified that appellant was of unsound mind.

To grant a new trial on this state of facts would permit Dr. Bolding to act as the final arbiter on the question of punishment. That is, he might refuse to disclose what he knew in the premises and await the verdict of the jury, which, if displeasing to him, might be set aside, by the simple expedient of changing his mind and deciding to testify. Such a procedure could very easily in some other case permit an appellant to hold back a witness to insure a new trial if the verdict went against him.

In Johnson v. State, 62 Tex. Cr. R. 284, 136 S. W. 1058, we said:

"* * * but no defendant ought to be permitted to speculate on the result of a trial, to neglect to summon his witnesses, go to trial, hoping to secure an acquittal, and, in the event of failure to do so, then bring forward the witnesses to be used as a means to secure a new trial."

Here, the appellant knew that Dr. Bolding had some information on the question to be determined by the jury. He cannot rely upon the witness' refusal to discuss the matter with him as an excuse for not calling him. Appellant applied for a subpoena for this witness, which was returned with the notation

that the witness was out of the state. He cannot now rely upon absence at the trial, because he made no motion for continuance based upon the absence of such witness.

In Howe v. State, 77 Tex. Cr. R. 108, 177 S. W. 497, we said:

"If he did not desire to go to trial without the presence of this witness, he should have moved to continue the case on account of his absence. He could not announce ready, take his chance on acquittal, and, in the event the verdict was adverse to him, expect to get a new trial on account of testimony of a witness for whom he had had process issued, and whom he knew was not in attendance on court."

With reference to the allegedly newly discovered witness Dr. Hoerster, we find the following from the affidavit of the attorney:

"Attached to the amended motion for new trial is the affidavit of Dr. Hoerster. I contacted this doctor and asked him to come to Austin and make an examination of the defendant and testify in his behalf, if he found the defendant insane. The doctor refused to do this, stating that he did not want to get mixed up in the matter."

From Dr. Hoerster's affidavit, we quote the following:

"I did not testify upon Gephart's trial in Travis County for the reason that I was not subpoenaed by either the State or the Defense. Had it ever occurred to me, however, that the extreme penalty would have been assessed against him or any other person whom I have known, under the circumstances and to the extent related above, my sense of justice and humanitary instincts would have compelled me to volunteer all of the information and the opinions which I possessed in the interest of seeing that justice is meted out."

What we have said concerning Dr. Bolding applies even more strongly to Dr. Hoerster.

In Hunter v. State, 81 Tex. Cr. R. 471, 196 S. W. 820, and in Todd v. State, 93 Tex. Cr. R. 553, 248 S. W. 695, we refused to grant a new trial in order to secure the testimony of witnesses who did not testify on the trial because they did not "want to get mixed up in the case."

With reference to the allegedly newly discovered witness Dr. Simpson, we find in the attorney's affidavit the following:

"Dr. Simpson was friendly enough, but, refused to divulge his opinion with regard to this defendant prior to the trial. I contemplated issuing a subpoena for this witness, even though I did not know what his exact testimony would be, but, found that he was in the State of New York, where he remained until quite some time after the trial."

Dr. Simpson's affidavit adds nothing to the information received by the jury in the form of minutes of the staff meeting at the Austin State Hospital, presided over by Dr. Simpson and signed by him.

With reference to the allegedly newly discovered witness Dr. Keyser, the affidavit of appellant's attorney fails to disclose the exercise of sufficient diligence which would require us to grant a new trial. The affidavit merely states that he had never heard of the doctor until after the trial.

As to the allegedly newly discovered witness Dr. Currie, insufficient diligence is established. It further appears that Dr. Currie participated in one of the staff meetings, as did Dr. Simpson, and the minutes of this staff meeting were before the jury. Further, there was no application for subpoena for the witness mentioned and no motion for continuance based upon his absence.

In concluding our discussion of new witnesses on the question of insanity, we refer to our opinion in McCune v. State, 156 Tex. Cr. R. 207, 240 S. W. (2d) 305, wherein we said:

"The issue of insanity after conviction is not foreclosed against appellant and it may be that his newly discovered witnesses may be offered by him if that issue should be hereafter raised."

Bill of Exception No. 4 complains that the prosecutrix was permitted to testify as to acts of intercourse with appellant prior and subsequent to the act charged in the indictment. The recent holdings of this court have approved such proof on the grounds that the same has a bearing on a material issue. That is, proof of the prior and subsequent acts would explain and lend credence to the testimony concerning the conduct of the parties on the occasion charged in the indictment, which would not

otherwise appear plausible. Johns v. State, 155 Tex. Cr. R. 503, 236 S. W. (2d) 820. In this connection, it will be noted that the defense of alibi was interposed, which constituted a denial of the act and rendered such proof admissible under our holding in Laredo v. State, 155 Tex. Cr. R. 183, 232 S. W. (2d) 852.

Bill of Exception No. 5 complains of the testimony of prosecutrix concerning acts of intercourse and sodomy had by appellant with the other children on the day charged in the indictment.

The basis of the objection set forth in the bill of exception is that such testimony was proof of extraneous offenses. With this, we cannot agree. Since 1915, the rule expressed in Tennel v. State, 78 Tex. Cr. R. 400, 181 S. W. 458, has prevailed. There it was held that in a statutory rape case proof of offenses committed on others at the same time is admissible as part of the res gestae. We have had occasion to follow this rule recently in Bowles v. State, 156 Tex. Cr. R. 548, 244 S. W. (2d) 811.

Bill of Exception No. 6 sets forth the direct and cross-examination of the witnesses Helen Troutman and Walter Troutman and concludes by stating "that after all the testimony of the witnesses had been concluded, the defendant moved the court to exclude all the testimony with regard to extraneous crimes * * *."

From this, it appears that no objection was made at the time the testimony was given and, coming as it did at the conclusion of the evidence, is too late. Recently, in Renfro v. State, 156 Tex. Cr. R. 400, 242 S. W. (2d) 772, in holding an objection made after the witness had answered ineffective, we said:

"The objection was first made after the witness had answered, and no reason is shown for not objecting timely thereto. The bill is insufficient to show reversible error in the court's refusal to strike the testimony."

In Middleton v. State, 86 Tex. Cr. R. 307, 217 S. W. 1046, we said:

"It would in no event be sufficient for appellant to make a motion to strike out the objectionable testimony of a witness upon grounds not presented when the witness offered to testify, and there was no error in overruling the objection made, or in refusing appellant's motion."

See also Brown v. State, 155 Tex. Cr. R. 347, 235 S. W. (2d) 142.

What we have said with reference to proof of prior and subsequent acts between the parties, and offenses committed on others at the same time and place, makes admissible a great majority of the evidence shown by this bill. Since he objected to all of it, part thereof being admissible, his objection fails. Appellant should have called the court's attention to that which was actually objectionable.

Bill of Exception No. 7 relates to the testimony of Mr. Flournoy, the sheriff of Fayette County.

Caution should be exercised by the state in calling a witness whose testimony is necessarily fraught with danger. But we cannot dictate the manner in which a case should be tried, other than as provided by the rules of evidence. We must take the record as we find it and apply the law thereto. This, we proceed to do.

On direct examination by the state, Sheriff Flournoy testified that he had had occasion to observe appellant, and that, from such observation, he had concluded that appellant was sane and knew the difference between right and wrong. On cross-examination, Flournoy stated that he had signed an affidavit in Fayette County during the time he had appellant under his observation to the effect that he believed appellant to be insane, and explained his conduct by stating that "he had a reason for doing it." On redirect examination, Flournoy stated:

"The reasons for signing this affidavit are that at the time we had this man under arrest, this new law regarding sex criminals wasn't in effect. In fact there wasn't a law at that time. This man had assaulted some little girls over there in Fayette County * * *."

The objection was leveled at the above on the grounds that it constituted proof of extraneous crimes. The objection was first overruled; and then, after deliberation, the court instructed the jury:

"Gentlemen of the jury, the jury is instructed that you will not consider the testimony of the witness, Sheriff Flournoy, concerning offenses alleged to have occurred in Fayette County

by the defendant for any purpose other than as bearing upon the credibility of the witness, Sheriff Flournoy, if it does. That is in regard to the testimony which you have just finished hearing just prior to the recess."

However, we observe that county attorney Hart was questioned also with reference to the reason for having the sanity hearing and testified, without objection, that the same was held because appellant was charged with a misdemeanor offense and should have been charged with several. On cross-examination by appellant's counsel, it was developed that the offense was a sex offense, the punishment for which could not exceed 2 years in jail and a $1,000 fine.

This testimony about the same transaction being more injurious than that complained of in this bill was admitted without objection.

What has been said also disposes of Bill of Exception No. 8, wherein said testimony of the sheriff was objected to as being a collateral attack on the Fayette County lunacy judgment.

Bill of Exception No. 10 complains of the refusal of the court to grant appellant's motion to exclude certain testimony concerning past offenses made after the witness had finished testifying. An examination of the bill reflects that part of the complained of testimony was elicited by appellant's counsel on cross-examination. Therefore, the bill fails to reflect error, first, because no objection was made at the time the evidence was given and, second, because the evidence was given in answer to questions on cross-examination by appellant's counsel. It will be noted, however, that the court gave the jury a limited instruction to disregard the testimony.

Bill of Exception No. 12 is based upon claimed fundamental error in the failure of the trial court to exclude evidence of other acts of intercourse between prosecutrix and appellant, even though not objected to at the time the testimony was given. The holding in the Johns case, discussed under Bill of Exception No. 4, disposes of the contention raised herein. To us, it is immaterial at which stage of the proceedings the evidence is introduced.

Bills of Exception Nos. 17 and 18 are also based upon claimed fundamental error in the failure of the trial court to exclude

a portion of the testimony of the witness Hart relating to his reason for prosecuting the insanity complaint against appellant in Fayette County. It appears from the bill that no objection was made at the time the testimony was given, and such objection was not advanced until appellant's motion for new trial. For this reason, these bills reflect no reversible error.

Bill of Exception No. 19 complains of an inquiry addressed to the court in the presence of the jury by the district attorney relative to the limitation of the state's cross-examination of appellant's wife. In Fondren v. State, 74 Tex. Cr. R. 552, 169 S. W. 411, the appellant offered his wife as a witness, but did not ask her anything about the gravamen of the offense on trial. The county attorney, when he took her on cross-examination, said:

"They have not questioned you anything about this operation, and for that reason we will not do it— is the reason we cannot do it."

In reviewing the matter, we said:

"We see no reason whatever why the county attorney could not or should not have made said statement to Mrs. Fondren. * * * It has uniformly been held by this court that the prosecuting attorneys may comment on the failure of a defendant to produce his wife as a witness or upon any omissions in her testimony if she testifies."

We see no distinction in the case at bar, where the prosecutor directed a similar statement to the court in the form of a question rather than to the witness, as was done in the Fondren case.

Bill of Exception No. 25 is directed at the failure of the court to order on his own motion a separate trial on the question of appellant's sanity at the time of the commission of the offense. The order of procedure in the case at bar is set forth in the bill. From it, we see that when the case was called for trial the district attorney filed an affidavit to the effect that there was a question as to the sanity of appellant and that, thereupon, a separate trial was had as to appellant's present sanity. No request was made, at the time, that appellant's sanity at the time of the commission of the offense be adjudicated. It will be seen, therefore, that the hearing was had on the issue raised by the pleadings before the court.

It will further be noted that on the trial on the merits the appellant introduced evidence tending to show that appellant was insane at the time of the commission of the offense and at the time of the trial, and such issues were submitted to the jury for their determination.

Appellant urges us to overrule our opinions in Wilson v. State, 58 Tex. Cr. R. 596, 127 S. W. 548, and in Chase v. State, 41 Tex. Cr. R. 560, 55 S. W. 833. This, we decline to do.

We next discuss appellant's contention raised in Bill of Exception No. 1 that the judgment of the Travis County Court restoring his sanity was void.

His contention in this respect is that, since the terms of Article 5561b provide that the affidavit that an inmate has been restored to his right mind must be filed with the county court by the superintendent of the State Hospital having custody of the inmate, and since there is no showing that the person mentioned in the judgment in fact held such a position, or that he was acting under the direction of such officer in making such complaint, the same should not be considered as a valid judgment. With this contention, we cannot agree. The state introduced in evidence, without objection, a judgment valid on its face. The burden then shifted to appellant to establish his contention that the judgment was void. This, he has not done.

We note that the trial court first granted appellant a separate trial on the question of his sanity and then, on the trial on the merits, where the defense of insanity was again interposed, the trial court, in accordance with the rule expressed in the Witty case, supra, charged the jury as follows:

"The verdict, judgment and record of the county court of Fayette County, Texas, which have been introduced in evidence before you, finding that the defendant was insane at the time he was tried in that Court on the 28th day of February, 1950, establishes the fact that he was insane at the very time he was tried in said Court, and you are instructed that the verdict in that cause raises the presumption that he was insane at the time of the commission of the offense charged, (if you do find that there was an offense committed) but whether he was in fact sane or insane at the very time of the commission of the offense alleged in this indictment, (if you do find the offense to have been committed,) is a question which is your exclusive

province to determine from all the facts and circumstances which are in evidence before you.

"You are further instructed that the burden of proof is on the State to show by the evidence, beyond a reasonable doubt, that the defendant was sane at the time he raped June Troutman, if you find that he did rape June Troutman. In ordinary cases when insanity is interposed as a defense for the commission of a crime on the part of the defendant, the presumption is that he was sane when the crime was committed, until the contrary is shown, and the burden of proof is on the defendant to show that he was insane; whereas, in the case before you, the burden of proof is on the State to show that the defendant was sane at the time he raped June Troutman, if you find he did rape June Troutman, by competent evidence, beyond a reasonable doubt."

The conclusion is reached that, as thus presented, appellant's every right was protected.

We applaud the diligence with which appellant's counsel has presented his appeal to this court. His brief has been very helpful to us in our consideration of the points raised.

Finding no reversible error, the judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In a motion for rehearing, with a 75 page brief, appellant presents his grounds for rehearing based on five propositions, and refers us to 123 cases upon which he relies to sustain his propositions. We have read this brief with great care and have concluded that only the fourth ground need be considered in this opinion.

It is appellant's contention, in his motion for rehearing, that the prior judgment of insanity was res judicata of the question of appellant's sanity at the time of the commission of the alleged offense for which he was indicted. To reach this conclusion it would be necessary to overrule every case on the subject in Texas, and specifically Witty v. State, 69 Tex. Cr. R. 125, 153 S.W. 1146, an opinion written by Presiding Judge Davidson on February 19, 1913. This opinion has stood the test of many

cases before this court. It has been frequently attacked and in no instance has the court seen fit to modify it or even criticize it. In the instant case it is specific authority, and is followed in the original opinion with sound application to the facts now before us.

The same contention was made in the Witty case as in the instant case, that is that the finding of the jury in the county court was conclusive in the trial for murder as to the insanity for the ten or twelve months prior to the trial in the county court, as found by the jury in that court in answer to questions submitted to it, and thereafter until another trial should find him sane. Referring to the facts thus indicated, we quote from the opinion as follows: "If these views are correct, and we believe they are, then the state was not concluded from the prosecution of the case by reason of the verdict of the jury in the county court, but that that judgment would be presumptive or prima facie evidence of insanity both before and after its rendition. This being correct, it shifted the burden of proof from the defendant to the state, and the state was required to assume the burden of proof in order to show that appellant was sane at the time of the homicide."

We find from many jurisdictions varying opinions on the subject but, as further stated in the Witty case, "The rule, however, in Texas is equally well settled that wherever insanity has been shown by a judgment of the county court in an inquisition or of de lunatico inquirendo, the presumption is that he is insane at the time set out or covered by the verdict of the jury if it overreaches and goes back in its finding as to the length of time the party has been insane, and it is equally the rule that the presumption of insanity obtains from that time forward."

After discussing this rule, the opinion states further: "We, therefore, hold under the first question presented that the judgment of the county court adjudging appellant insane is not a bar to the prosecution for murder as contended by appellant, but is presumptive evidence of insanity, and makes a prima facie case, to be overcome by the state under the rules laid down."

The foregoing tersely states the court's conclusion on the very question before the court at that time which we have before us in the instant case. The law is sound. It meets every

need which the accused can claim for a fair presentation of the issue of insanity to the jury, and, at the same time, permits the state to conduct a prosecution in proper cases. If we should hold its res judicata a fiend could scheme to protect himself by going into another county and so conduct himself as to bring about a trial for insanity, then secure his release by the simple method revealed in the history of this case. After that he would be licensed to go about the state committing any offense, burglary, robbery, forgery, murder, or rape, and walk out free by the simple process of pleading res judicata to the question of insanity—and the state would be helpless. We have no evidence beyond the record that such is the case before us. If the plea should be sustained others would be licensed to arm themselves with such a judgment and walk out of the court room free of any number of offenses which they might commit.

We have no modification to make of the original opinion and the motion for rehearing is overruled.