**Raymond Eugene LUDWIG, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

No. 28236.

Court of Criminal Appeals of Texas.

Oct. 3, 1956.

On Motion for Rehearing Dec. 12, 1956.

Jones, Herring & Jones, Austin, for appellant.

Les Proctor, Dist. Atty., Francis J. Maloney, Jr., Asst. Dist. Atty., and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Presiding Judge.

The indictment charged that Otto Ludwig and appellant, with malice aforethought, shot one Henry Roach with a shotgun, with intent to murder him.

At the close of the evidence, the trial court submitted the case to the jury under a charge authorizing conviction of assault with intent to murder with and without malice and of aggravated assault, and the jury returned a verdict finding Otto Ludwig guilty of assault with intent to murder without malice, with punishment of three years in the penitentiary, and by separate verdict found appellant guilty of aggravated assault and assessed his punishment at nine months in jail.

Both defendants appealed to this Court, but thereafter Otto Ludwig's request that his appeal be dismissed was granted, and the appeal of Raymond Eugene Ludwig alone is before us.

■ In view of our disposition of this cause here before us, recitation of the facts will not be deemed necessary other than to observe that the appellant's father was identified by the witnesses as being present at the time the offense was committed, but the appellant himself was not identified by any witness as one of the two persons who participated in the assault upon the lonely country lane. The State's case was then based upon circumstantial evidence. As a circumstance to show that the appellant participated in the instant assault, the State tendered the witness Knox, who testified that at some time prior to the offense charged in the indictment the appellant and his father, both of whom he identified, had threatened to commit a similar assault upon him at about the same place on the same country lane. It is obvious that this was evidence of compelling probative force and in our judgment was sufficient, together with the other evidence, to authorize the jury to return a verdict finding that the appellant participated in the instant assault.

Knox testified that he had gone to the country lane on the night about which he testified in company with a "woman companion." When Knox was being cross-examined, he was asked to name his companion of the evening; he answered that he would rather not do so, and appellant's counsel moved the court to instruct the witness to answer. This, the court declined to do and thereby fell into serious error. It is obvious from that which has been said that this woman companion was a very material witness to one of the State's strongest links in its chain of circumstances. She was not called as a witness, and when the appellant sought to learn her identity he was unable to do so because of the ruling of the court. If her identity had been made known to the appellant, he could have interviewed her with the thought of calling her as a witness. If she had denied that she was with Knox on the night about which he testified or described the men who threatened them in such a manner as to preclude the appellant being one of them, the effect of such testimony would have been telling.

The error here shown is so apparent as to hardly require the citation of authority.

■ Article 1, § 10, of the Bill of Rights of our Texas Constitution, Vernon's Ann. St., guarantees to an accused the right to be confronted by the witnesses against him.

This right to be confronted by the witnesses carries with it the right to cross-examine them. 44 Tex.Jur. 145, p. 1142; Bell v. State, 2 Tex.App. 215; and Weaver v. State, 129 Tex.Cr.R. 317, 86 S.W.2d 758.

The action of the court in refusing to instruct the witness to answer the question constituted an undue abridgement of ap-

pellant's right of cross-examination of the witness on a material matter and was reversible error.

■ Upon another trial, the injured party should not be permitted on direct examination to bolster his own testimony by hearsay concerning the examination of pictures.

For the errors pointed out, the judgment is reversed and the cause remanded.

On State's Motion for Rehearing

WOODLEY, Judge.

The state challenges the correctness of the opinion reversing the conviction and calls our attention to the case of Nash v. State, 121 Tex.Cr.R. 13, 51 S.W.2d 689.

Nash v. State was an arson case. A witness for the State testified that he had been with a girl and was on his way home alone when he heard the explosion at the burned house and saw Nash run away. The trial court refused to compel the witness to divulge the name of the girl he had been with and this court found no error.

The contentions here made were made in the Nash case and were overruled.

■ Attention is also called to the court's qualification to the bill of exception complaining of the refusal of his motion to have the court instruct the witness to answer the question "Who was the woman with you?", the witness Knox having answered "I would rather not personally * * *".

The qualification reads: "In propounding the question to the witness George Knox set forth in the Bill of Exception, the defense did not show any materiality or relevancy to any issue in the case in connection with the question and did not offer to show any materiality or relevancy."

Having accepted and filed the bill as qualified, appellant is bound by such qualification.

■ We were in error in reversing the conviction upon the error assigned in said bill of exception, and we now hold that reversible error is not shown in the refusal of the trial court to require the witness Knox to divulge before the jury the name of his woman companion.

In this connection we observe that for aught the record shows appellant may well have known the identity of this woman or learned of her identity before the trial concluded. The record does not establish the contrary.

Assume that the trial judge directs a witness to name his woman companion and he refuses. Would this entitle the accused to acquittal or reversal of conviction? We think not.

■ The prosecuting witness, Henry Roach, a 21 year old Negro member of the United States Air Force, and his 17 year old girl companion, a high school student of Austin, were out driving on the night of March 31, 1955.

About 9:30 P.M. Roach and his companion turned near the dead end of the Tannehill Lane and parked their car on the west side of the road in the vicinity of a gate in the east fence line.

Two men appeared at the fence on the west side of the road, each with a gun and a flashlight, one of whom was Otto Ludwig who came under the fence into the lane with a shotgun and shortly thereafter assaulted Roach by striking him with the butt end of the gun.

The second man had a rifle which corresponded in appearance with a 30-30 rifle thereafter found in the Ludwig home hereinafter referred to. He attempted to strike Roach over the shoulder of Otto Ludwig.

As Roach was attempting to drive away, shot, size "BB" or slightly smaller, came

through the window on his side of the car, some of which tore away one side of his face and deprived him of an eye, and some went through the windshield of the car on the right side. The two men disappeared.

The closest house to the scene of the shooting and the only residence on the lane was that of appellant, who occupied the house with his wife and children. Otto Ludwig, appellant's father, also made this his home.

Shoe tracks of two men made after the rain which fell earlier that night were found which led from the Ludwig residence across the road and finally to the fence where Otto Ludwig and his companion were first seen.

Similar tracks were found leading from the vicinity of the gate near where the car was parked and to the east of the lane, to the Ludwig residence.

No adult male other than Otto Ludwig and appellant lived on the premises and none came there on the night in question prior to the arrival of investigating officers.

Diligent search revealed no other tracks in the area leading in or coming from other directions. The Roach car was so parked that he was able to say that the men did not come down the road, and there were no tracks past the dead end.

Neither Roach nor his companion were able to positively identify appellant as the second man and neither of them saw who fired the shot. Both testified that appellant answered the description of the second man, Roach testifying "he fits all description other than I could not positively identify him by face * * *. His face and features and things." His companion, after pointing appellant out as the man, testified that she "did not get to see his face; did not see him clear enough to say."

Without reviewing the testimony of the various witnesses, the evidence, though conflicting, authorized the jury to find that appellant and his father Otto Ludwig were greatly concerned about the use of the dead end road in the vicinity of the Ludwig home and the dumping of trash and debris along the road and were offended by the conduct of persons parking in the lane, and on occasions had threatened to assault and kill and had assaulted some one or more such persons. Also there is evidence to the effect that appellant was seen along the lane with a shotgun, though he denied as did Otto Ludwig that they owned or possessed such a gun.

The jury having accepted the testimony that the person who had in his possession a shotgun was Otto Ludwig, the evidence sustains their finding that appellant was his companion and acted with him in the shooting.

■ Appellant is in no position to complain that the evidence shows an assault with intent to murder. It was an assault made with a deadly weapon and serious bodily injury was inflicted, and the jury was authorized in the charge to convict for aggravated assault, the lesser offense.

■ Bill of Exception No. 1 complains of the overruling of appellant's motion requesting the court to instruct the jury to disregard the testimony of the prosecuting witness Henry Roach, on re-direct examination, which was to the effect that he had examined a number of pictures which included the pictures of appellant and his father, and had identified Otto Ludwig.

This testimony related to pictures shown to Roach in the absence of appellant or his father, and is claimed to be hearsay.

No objection was made when this testimony was offered and admitted and the witness was cross-examined rather thoroughly in regard to the pictures. He had been excused and other witnesses had been

examined before the motion to exclude was made.

Appellant cites a number of authorities to the effect that, though admitted without objection, hearsay and incompetent testimony should be given no probative force or effect.

Appellant, by his failure to object when he had opportunity to do so, waived any error in the admission of the testimony mentioned. Gephart v. State, 157 Tex.Cr.R. 414, 249 S.W.2d 612; Renfro v. State, 156 Tex.Cr.R. 400, 242 S.W.2d 772; Curry v. State, Tex.Cr.App., 276 S.W.2d 832.

There is no occasion for this Court to determine whether or not the testimony was hearsay and wholly incompetent, for proof of no issue depends upon such testimony. We are not called upon to take it into account in weighing the evidence. It may be entirely disregarded, and the verdict sustained.

Finding no reversible error, the State's motion for rehearing is granted; the order reversing the conviction is set aside and the judgment is now affirmed.

MORRISON, Presiding Judge (dissenting).

There are certain rules of evidence that find their foundation in the Constitution and need little but their innate soundness to recommend them. It has often been said that bad facts make bad law. That criticism could with justice, I believe, be leveled at the opinion of my brethren herein.

The Nash case cited by my brethren is not authority and will not support their present holding here. It is the only authority they cite. The woman in the Nash case was not a witness to the burning and could not have supported or contradicted Bridges' identification of the appellant as being the person whom he saw fleeing from the building. She was merely the reason Bridges happened to be passing that way when he did. Not so in the case at bar.

The woman in the case was present and saw everything that Knox saw. I quote from that opinion:

"The court qualifies the bill to the effect that it was not shown or contended by appellant's counsel that the woman with whom the witness Bridges had been that night was present at the fire or knew anything whatever about it, or that she was with the witness at the time he saw the fire * * *. The record shows that the said witness Bridges had testified and given the name of the person who was with him the time that he heard the explosion and saw the appellant run from the house." [121 Tex.Cr.R. 13, 51 S.W.2d 692.]

I cite an example of the principle of law before this Court in this case. "A" testifies that, while walking with a friend, he witnessed a homicide and gives very damaging testimony against the accused. Counsel for the accused says, " 'A', I do not believe your testimony. I want to seek out your friend and see if you are telling the truth. What is his name?" "A" says, "No, I will not tell you." Counsel calls upon the court for help, as he did in this case, and the court refuses the accused that aid and thus deprives him of his right to prove, if he could, that "A" was giving false testimony against him. No appellate court that I have ever heard of would support such a verdict, and yet that is exactly what my brethren are doing here.

The court's qualification of the bill gives my brethren small comfort. They seem to think that it was incumbent upon the appellant to point out to the court the materiality of this missing witness' name. Her very presence at the scene demonstrated, without the necessity of explanation, the materiality and relevancy of her testimony. She certainly was a part of the scene as much as Knox. She heard the conversation of the parties and saw the actions of all present. Whatever was said or done transpired in her presence, and it concerned

and related to her as well as it did to Knox. No qualification from any court could alter the fact that she was present at the time in question nor destroy the right of the accused, under the Constitution, to learn her name so that he might call her as a witness. Not even the Legislature could destroy such right. Certainly, the fact that it might embarrass Knox or the woman to give her name could not alter the Constitution no more than any court's qualification could accomplish such end. A vote of the people is required to amend the Constitution, and yet my brethren have here done so in order to prevent embarrassment to Knox or the woman and to uphold a trial court in a mistake that he never should have made. I want no part of such proceedings.

This record nowhere discloses the name of the missing witness, and there is nothing to support my brethren's conclusion that the appellant "may well have known the identity of this woman."

My brethren pose a question not raised by this record. They ask if an acquittal or reversal should follow if a witness declines to testify even though the court instructs him to do so. The court in the case at bar declined to so instruct the witness, and such ruling should bring about a reversal of this conviction. We should not *uphold a trial court* in a ruling the effect of which was to deprive the accused of his constitutional right to be confronted with the witnesses against him. What we should do in another state of facts does not concern me today, but I do observe that, as I see it, the State should not put a citizen on trial for his liberty unless they have witnesses to support such prosecution who will tell the truth and the whole truth. Knox told only half of what he claims happened that night, and by his refusal to tell all, in which he was supported by the court's ruling, he deprived the accused of the only way on earth he had of proving that the half which he told was untrue. This case is just as simple as that.

My brethren are not merely deciding the case before us here; far more important is the precedent which they set which shall determine how future cases shall be tried and may affect the lives of many of us. However guilty this accused may be, he is entitled to a trial in accordance with the Constitution.

I shudder at the thought of the consequences of this opinion of my brethren and shall relentlessly labor to overrule it.

I respectfully enter my dissent.